[L. A. No. 15253.   In Bank.—October 31, 1935.]

AUGUSTUS M. COBB, Respondent, v. THE PACIFIC MUTUAL LIFE INSURANCE COMPANY OF CALIFORNIA (a Corporation), Appellant.

Knight, Boland & Riordan, Eldred Boland, Heaney, Price & Postel, Harold A. Parma, Loeb, Walker & Loeb and Herman F. Selvin for Appellant.

Clifton Hildebrand, Griffith & Thornburgh and Erwin P. Werner for Respondent.

SEAWELL, J.—Plaintiff and respondent Augustus M. Cobb will be referred to, when not designated by name, as the insured or respondent. The Pacific Mutual Life Insurance Company, a corporation, will be referred to as the company, or as insurer, or as appellant. Respondent Cobb brought this action against The Pacific Mutual Life Insurance Company, a corporation, upon two policies of insurance issued by said company to insured Cobb, during the month of August, 1929. One of said policies was upon the life of the insured, and therefore it is only collaterally involved in the action. The other, No. 5603198, known as a noncancellable

income policy, is the policy which furnishes the basis of the action and it is brought to our attention by this appeal. By its terms the company obligated itself to pay indemnity on account of disability resulting from sickness or accidental means, at the rate of $250 per month for the period throughout which such disability "consists of continuous, necessary and total loss of all business time".

Said two policies above mentioned are in fact reissues of an original policy issued by said company to respondent Cobb on March 15, 1926. Said original policy was not only a life policy but it also contained a provision known as a business, permanent total disability provision which provided for health indemnity payment in a lump or gross sum of $15,000 in the event the insured should become totally, continuously and irrevocably disabled as a result of sickness. The original policy of 1926 insured against two elements of risk, to wit, death and health disability. In 1929 two separate policies were issued to take the place of the 1926 policy, one being issued solely upon the life of the insured and the other—No. 5603198, which forms the basis of the judgment herein—being issued as a noncancellable income policy, providing for the payment of health indemnity at the rate of $250 per month "for the period throughout which disability described above [in said policy] consists of continuous, necessary and total loss of business time, . . . " The original policy was canceled upon the issuance and acceptance of the 1929 policies. The main difference between the indemnity provisions of the 1926 and 1929 policies is apparent. The earlier one provided that said policy would fully mature upon either the death of the holder or upon total and irreparable disability suffered by the insured, payable in a gross or lump sum. The policy of August, 1929, in effect at the time of breach, provided for monthly payments of $250 so long as the insured should remain physically disabled to the extent expressly stated therein.

Two and one-half years after the 1929 indemnity policy was issued the insured became wholly, permanently and incurably disabled from the disease known as encephalitis or sleeping sickness. That the disabling effects of said disease have rendered the insured totally and permanently incapacitated within the terms of the policy and constitute a continuous loss of "business time", and that the course of the

disease is progressive and cannot be cured or arrested is conclusively established by all of the medical testimony in the case and this prognosis of the medical experts is not disputed by either of the parties to the action. This being true, the insured was entitled to receive a monthly payment of $250 per month provided he had made no fraudulent misrepresentations nor withheld any material information from the company's medical examiner as to the state of his health or made any statement as to facts which were not true and which, if fully and truthfully given, would have probably caused said company to reject said applicant as not being an acceptable or desirable risk. The insured became totally disabled so as to suffer the loss of all business time on March 14, 1932. Proper notice as to disability was given to the company and demand was made for monthly indemnity at the rate of $250 per month as provided in the contract of insurance, but the company repudiated its contract by giving notice of rescission and by refusing to pay any amount thereunder, claiming fraudulent representations and the suppression of material information bearing on the state of health of the insured during a definite period of time both immediately before and on the day he was examined and interrogated by the examining physician on behalf of the company on matters affecting his health and physical condition. ■ The company's repudiation was complete and absolute as it was made by written notice offering to restore all the premiums it had received from the insured, with interest, which amount it afterwards deposited in court. Said repudiation was again set up by its cross-complaint wherein it sought rescission and prayed for a cancellation of the policy on the ground that it had been fraudulently procured. Quoting from Williston on Contracts, volume III, section 1325, citing sustaining authorities, it is said: "So denying the validity of the contract between the parties, or insisting that its meaning or legal effect are different in a material particular from the true meaning or effect, coupled with the assertion, express or implied in fact, that performance will be made only according to the erroneous interpretation," amounts to total repudiation. In the instant case the validity of the contract was vigorously assailed by the company. The contract of insurance having been repudiated the insured filed his complaint containing three counts. The prayer of the first, as set forth in para-

graph 1, asks for indemnity at the rate of $250 per month, and paragraph 2 thereof prays for judgment in the gross sum of plaintiff's life expectancy, amounting to $54,270. The second cause of action prays for indemnity at the rate of $250 per month as in said policy provided, but does not make any claim for damages caused by a breach of the policy. It is a straight action on the contract. The third cause of action is grounded upon the policy of 1926 and judgment is asked at the rate of $250 for three months, plus the aggregate gross sum of $15,000 as provided in said 1926 policy. This policy was superseded by policy No. 5603198, issued in 1929.

Upon the trial of the case the jury rendered a verdict in favor of the insured, and in the words of the verdict assessed "his damages in the amount of the present worth of payments of $250 per month for a life expectancy of fifteen years". According to the American mortality tables the life expectancy of a person in reasonably good health of the age of the insured was a fraction above eighteen years. The trial court, treating the verdict of the jury as advisory, found that the policy and contract of insurance had been repudiated by the insurer without legal cause, and adopted the terms of the policy for the payment of monthly indemnity at the rate of $250 per month during the period of disability and decreed that the contract had been breached and that the insured was entitled to be indemnified in damages for "the present worth of the sum of $250 per month for the period of plaintiff's life expectancy of fifteen years and that the present worth of said sum was $30,830". Judgment was accordingly entered in said sum, together with interest thereon at the rate of seven per centum per annum from the 19th of May, 1932, together with plaintiff's costs of suit.

The trial court in its findings reviews at some length the charges that the insured procured said policy by fraudulent misrepresentations and by wilfully suppressing material information bearing upon the health of the insured, and concludes that while it is a fact that certain answers made by the insured as to questions bearing upon his health were not correctly given and certain facts within the scope of the medical examination were not disclosed by the insured, none of the acts or omissions complained of was "material to the acceptance of the risk and hazard assumed by defendant", and

none of the erroneous answers made to questions asked or failure to give requested information, was with intent to deceive the insurer.

An appeal was taken from said judgment by the insurer to the District Court of Appeal, Second Appellate District, Division Two (Scott, J., *pro tem.*, delivering the opinion of the court) and that portion of the judgment which applied the doctrine of anticipatory breach to the case and consequently allowed the insured a judgment for a sum equal to the present value of the monthly payments for the length of time that the insured at the time of the trial would be reasonably expected to live (fifteen years) was reversed and the insured was remitted to the amount of the accrued instalments. The finding that the policy had not been fraudulently or wrongfully procured was sustained.

Upon the petition of the insured a hearing was granted. The company did not request a hearing by this court on the question decided against it, to wit, the alleged fraudulent procurement of said policy, but actually opposed the petition of the insured for a hearing and asked that the decision of the District Court of Appeal, which was in part adverse to it, be held final as to both parties to the proceeding on all the issues embraced in the proceeding. The decision as to the fraudulent procurement of the policy having been rendered on conflicting evidence the company doubtless recognized the well-established rule to the effect that the judgment of the trial court will not be disturbed upon appeal in cases where, as in the instant case, there is evidence upon which the judgment may be sustained, and presented no argument to the court in an attempt to overturn that, or any portion of the judgment. We are in accord with the view expressed by the District Court of Appeal to the effect that the verdict of the jury finding against fraudulent procurement on the part of the insured is amply supported by the evidence.

The single question presented by this appeal is whether the doctrine of anticipatory breach is applicable to a policy of insurance which provides for payment of instalments of indemnity for disabilities in the manner herein set forth, even though the insurer repudiates the contract on the grounds that it would not have issued the policy had the respondent given truthful answers to the medical examiner and full information germane to the condition of his

health and which, if so given, may have reasonably resulted in his rejection as an insurable risk.

The rule as accepted by this state is decisively stated in a number of decisions of this court, the most recent of which (February 20, 1935), is *Brix* v. *Peoples Mutual Life Ins. Co.,* 2 Cal. (2d) 446 [41 Pac. (2d) 537]. In that case the insurance company by way of cross-complaint alleged that the policy upon which the action was brought was procured by the insured by means of material false representations made by the insured, and because of such it prayed for its cancellation and rescission. The court made findings against the company on the allegations of misrepresentations, thus taking notice of the issue of repudiation. The court gave judgment for plaintiff at the rate of $100 per month during the remainder of his life. The judgment was modified on appeal by striking therefrom the portion which gave to plaintiff $100 per month for the remainder of his life. The decision nowhere recognizes the right of the insured to obtain judgment for future benefits either in monthly payments or for a gross sum. On this branch of the law we said:

"The books are filled with cases in which actions have been brought to recover upon insurance policies similar to the one here involved in which the insured has attempted to recover judgment not only for accrued payments, but has also sought an adjudication as to instalments not yet due. While the decisions upon the right of the plaintiff in such character of actions to recover for instalments which have not yet accrued are not entirely uniform, the great weight of authority is to the effect that, in such actions, recovery cannot be had for any instalments falling due in the future. We cite only a few of such cases: *Robinson* v. *Exempt Fire Co.,* 103 Cal. 1 [36 Pac. 955, 42 Am. St. Rep. 93, 24 L. R. A. 715] ; *Atkinson* v. *Railroad Employees' Mutual Relief Society,* 160 Tenn. 158 [22 S. W. (2d) 631] ; *New York Life Ins. Co.* v. *English,* 96 Tex. 268 [72 S. W. 58] ; *Bonslett* v. *New York Life Ins. Co.,* (Mo.) 190 S. W. 870; *Commercial Casualty Ins. Co.* v. *Campfield,* 243 Ill. App. 453; *Metropolitan Life Ins. Co.* v. *Day,* 145 Ga. 425 [89 S. E. 576] ; *Mid-Continental Life Ins. Co.* v. *Christian,* 164 Okl. 161 [23 Pac. (2d) 672] ; *Metropolitan Life Ins. Co.* v. *Lambert,* 157 Miss. 759 [128 So. 750] ; *State Life Ins. Co.* v. *Atkins,* (Tex. Civ. App.) 9 S. W. (2d) 290; *Green* v. *Inter-Ocean Casualty Co., supra* [203

N. C. 767, 167 S. E. 38]; *Garbush* v. *Order of United Commercial Travelers,* 178 Minn. 535 [228 N. W. 148]; *Howard* v. *Benefit Assn. of Railway Employees,* 239 Ky. 465 [39 S. W. (2d) 657, 81 A. L. R. 375]; *Washington County* v. *Williams,* 111 Fed. 801 (C. A., 8th Cir.). In *Atkinson* v. *Railroad Employees' Mutual Relief Society, supra,* 22 S. W. (2d) 631, 634, the court declared the law as follows: 'While the benefit certificate issued to complainant constitutes an entire contract the obligation thereby cast upon the society is severable, with a right of action accruing to the holder for each benefit instalment payable in default. (Citing authorities.) So it is generally held that, in an action at law for breach of insurance payable in weekly or periodic instalments, only those instalments in default at the time suit was brought may be recovered.' (Citing authorities.)''

*Howard* v., *Benefit Assn. of Railway Employees,* 239 Ky. 465 [39 S. W. (2d) 657, 81 A. L. R. 375], is directly in point. It is there held that upon repudiation by an insurer of its obligation under a health insurance policy to make stipulated monthly payments so long as the insured shall continuously suffer total disability the insured may not treat the entire contract as breached and sue for gross damages based upon his alleged expectancy of life. The annotation (81 A. L. R. 379) contains the statement that ''the decision is supported by a substantial number of authorities holding that judgment cannot be rendered in favor of the insured for instalments of indemnity not accrued at the date of the judgment''. A number of the decisions of our sister state courts supporting this doctrine are listed and a brief synopsis of said cases is set forth. We are mindful that there are many decisions which hold to the contrary view. It would be an interminable and delicate task to attempt even to sketch the origin, development and application of the doctrine of anticipatory damages for the breach of contracts, taking either the leading English case of *Heschster* v. *De La Tour,* 2 E. & B. 678, or the leading American case of *Roehm* v. *Horst,* 178 U. S. 1 [20 Sup. Ct. 780, 44 L. Ed. 953], as a guide. Both have been criticized by some very eminent law writers, but they are nevertheless accepted as firmly establishing the doctrine which awards damages for the wrongful deprivation of future benefits. The difficulty lies not so much in the elucidation of the doctrine as it does with a knowledge as to the time and things

to which it should be applied. ■ There can be no antici-patory breach of a unilateral contract. (Williston on Con-tracts, vol. III, sec. 1328.) In volume 1, Restatement of Con-tracts, California Annotations, section 318, the rule is thus stated: ''In unilateral contract for payment in instalments after default of one or more no repudiation can amount to an anticipatory breach of the rest of the instalments not yet due.'' (Citing a list of California decisions.) It is also the law that a bilateral contract becomes unilateral when the promisee has fully performed. In the case at bar the promisee had fully performed. He was exempt from future performance so far as dues or assessments were concerned. The fact that he was required or requested to submit to rea-sonable future medical examinations or furnish an occasional health report is too trivial and inconsequential to be regarded as an unperformed obligation on the part of the insured. He was therefore within the exception stated in the rule which holds that no repudiation can amount to an anticipatory breach of the rest of the instalments not yet due. ■ There is yet another obstacle in the way of plaintiff's right to re-cover future benefits in a gross sum, even under the theory advanced by him. He did not rely solely upon the right of election to declare a breach of the contract but, as above noticed, in one count of his complaint he affirmed the contract and prayed for judgment in accordance therewith. This alone would be sufficient to hold him to an action on the con-tract.

■ The principle upon which the right to declare a con-tract at an end without a provision to do so and to sue for a breach of such a contract differs so fundamentally and widely from a contract of indemnity to pay a definite fixed sum in money during health disability that the doctrine of antici-patory breach would seem to be an inept and in many cases an unjust doctrine to invoke.

The action is based upon contract for the payment of money, not unlike a promissory note providing for instalments or the payment of rent. The instalments as they become due are but debts. Yet if the insurer in good faith and with color of right challenges the good faith of the insured and fails to prevail in an action he is required to pay a large gross amount although the insured is suffering from a perma-

nent progressive disease and will not probably live the period of expectancy that a person in normal health would live.

To apply to this case the principle contended for by the insured would, in effect, penalize the company for asserting its defense if it did not prevail in a controversial matter even if made in good faith and with color of reason, notwithstanding the fact that the insured expressly agreed that "The falsity of any statement in the application materially affecting either the acceptance of the risk or the hazard assumed . . . or made with the intent to deceive, shall bar all right to recovery under this contract." It is admitted that there is some authority for the application of this rule in cases so clearly within the doctrine of anticipatory breach that there is no room for question, but at best it is a drastic rule and should not be applied to a contract in which the parties impliedly recognize the right of contest.

The insured urges the application of the doctrine on the theory that if the company becomes unfriendly or hostile to the insured it may compel him to bring an action on every instalment falling due, possibly for the purpose of harassing the insured, thereby causing a multiplicity of actions. It would seem that a reasonably sound business policy would of itself be a sufficient consideration to deter an insurer against practices which could not do otherwise than bring discredit to it. Besides, the law ought to be able to offer relief where compensation is wilfully and contumaciously withheld. In the instant case, however, the situation cannot occur. It is admitted that the insured is totally and incurably ill with a progressive and totally incapacitative disease. The decision as to the validity of the contract has become final and there is nothing left to be done but the payment of the indemnity as expressly provided by the parties thereto.

The tendency of this court has consistently been opposed to the application of the doctrine of anticipatory damages to cases involving fixed instalment money payments which arise in the manner set forth in the contract herein. There is ample authority in other jurisdictions which sustains our conclusion and it is true that there are also a number of decisions holding the contrary view.

The cause is remanded to the trial court, with leave to respondent Cobb to file a supplemental complaint including all payments due, and interest thereon, at the time of filing the

complaint herein. That portion of the judgment which allows respondent damages for breach of said contract for the present worth of the sum of $250 per month for plaintiff's life expectancy of fifteen years, estimated to be the gross sum of $30,830, is reversed. In all other respects the judgment is affirmed. Let proceedings be had consistent with the views expressed and conclusions reached by this decision.

Waste, C. J., Shenk, J., Curtis, J., and Thompson, J., concurred.

Rehearing denied.