[Civ. No. 35143. Second Dist., Div. Five. Sept. 3, 1970.]

ROGER DIAMOND, Plaintiff and Appellant, v.
UNIVERSITY OF SOUTHERN CALIFORNIA,
Defendant and Respondent.

50

## COUNSEL

Roger Diamond, in pro. per., for Plaintiff and Appellant.

Musick, Peeler & Garrett and C. Robert Ferguson for Defendant and Respondent.

## OPINION

KAUS, P. J.—Plaintiff, an attorney, who in this class action represents himself and about six hundred others "similarly situated," appeals from a judgment in defendant's favor. The judgment followed the superior court's granting of a motion for summary judgment.

The complaint was filed on December 9, 1968, two weeks after defendant's football team had been selected to play in the Rose Bowl game on January 1, 1969. It contained the following allegations: before the start of the 1968 football season defendant had offered to sell to the public so-called "economy" season tickets, promising that each buyer of such a ticket would be given an option to purchase a Rose Bowl ticket, if the team were to be selected to play there. Plaintiff and the members of his class purchased economy season tickets for the 1968 season. This was the first time they had done so. After the team's selection for the Rose Bowl game, on or about December 4, 1968, instead of the promised application for a Rose Bowl ticket, plaintiff received a note to the effect that for reasons beyond defendant's control, first time economy season ticket holders could not be furnished with such applications. The note, however, thanked plaintiff for his support of Trojan football. From the receipt of this note plaintiff concluded that defendant had breached its contract with all first time economy season ticket holders, each of whom was alleged to have been damaged in the sum of $12, the difference between the market value of a Rose Bowl ticket and the price which defendant would have charged, had it fulfilled its agreement.[1] Since, according to the complaint, the total number of season tickets purchased by the six hundred members of plaintiff's class was three thousand, total damages alleged are $36,000. The complaint also prays for costs, attorney fees, "such other relief as the court deems just and proper" and "[t]hat upon rendition of judgment against defendant as a condition of participation in said judgment by any of the other parties plaintiff similarly situated, that such party pay [a] proportionate share to plaintiff of the cost and expenses of this litigation." A demurrer was overruled on January 6, 1969. In the meanwhile the game had become history.

On January 23, 1969, defendant filed its notice of motion for summary judgment which was accompanied by the declaration of Elton D. Phillips, the business manager of defendant and the chairman of its "Football Ticket Committee."

---

[1] It is of no particular importance to this appeal, but the proper measure of damages probably was the difference between the value of an economy season ticket with the Rose Bowl option and the value of one without it.

According to Mr. Phillips' declaration the university had sold a total of 46,052 season tickets for the 1968 football season, all with the representation that the purchaser would receive an option to buy a Rose Bowl ticket. After the selection of defendant's team to play in the Rose Bowl, the Pasadena Tournament of Roses Association allotted defendant 53,003 tickets of which 10,590 were to go to certain "specifically named groups, companies and associations." This left 42,513 tickets for the 46,052 season ticket holders. A system of priorities was then established and first time economy season ticket holders were given the lowest priority. Applications for Rose Bowl tickets were then mailed to all other season ticket holders. They contained a proviso that orders for tickets had to be mailed to defendant no later than December 4, 1968. Between December 8 and December 16 it appeared that a sufficient number of season ticket holders had not availed themselves of their option so that it became possible to send applications for tickets to those who had previously received none, this is to say, the first time economy ticket holders. This was done on December 17.[2]

It thus appeared that, somewhat belatedly, defendant met its obligation to the members of plaintiff's class.

Plaintiff filed a counterdeclaration to the effect that he had had a telephone conversation with an attorney representing defendant on December 16, but had not been told that defendant had discovered the availability of tickets for the members of his class. He was, however, so informed by the attorney on December 19, when the mailing of the applications had already taken place. In that conversation plaintiff took the position that defendant was not privileged to so proceed without judicial approval, but that he, plaintiff, would cooperate in securing such approval. Counsel for defendant advised plaintiff that defendant would proceed without permission from a court.

Defendant's motion for summary judgment was granted on February 10, 1969, and the judgment from which this appeal is taken was entered on March 4.

Admittedly the sole purpose of the appeal is to vindicate plaintiff's right to attorney's fees.[3]

---

[2]If it was the declaration's purpose to prove that defendant's failure to furnish the members of plaintiff's class with ticket applications was excused by impossibility, it failed to achieve its objective. Nowhere is it explained why defendant signed a contract which made the fulfillment of its obligation to all season ticket holders impossible unless about 3,500 of them failed to order tickets.

[3]". . . As a case of first impression, the Court is asked to spell out the procedures to be followed in connection with the settlement of a class action law suit, and in

Plaintiff reasons that he is entitled to attorney's fees on the following analysis:

1. The notice of December 4 was an anticipatory repudiation of defendant's obligation to furnish plaintiff with a ticket application.

2. The filing of the action on December 9 was a change in position which terminated defendant's power to retract the repudiation. (*Guerrieri* v. *Severini,* 51 Cal.2d 12, 19 [330 P.2d 635]; Rest., Contracts, § 319; 4 Corbin, Contracts (1951) § 980; cf. *Kentucky Natural Gas Corp.* v. *Indiana Gas & Chemical Corp.,* 129 F.2d 17, 20 [143 A.L.R. 484].)

3. Sending the applications to the members of plaintiff's class after their causes of action against defendant had matured was, in effect, a settlement of their grievances which illegally bypassed plaintiff, the representative of the class. In thus proceeding defendant made it impossible for plaintiff to apply for his attorney's fees and reimbursement for his costs.

4. Such attorney's fees and costs may be awarded even if the efforts of the representative of the class do not create a common fund among its members. Procedurally, it is suggested, that the judgment should be reversed, with directions to the trial court to determine the amount of damages suffered by the members of the class and to award plaintiff a reasonable attorney's fee based upon "the nature of the result achieved." The payor of the fee, presumably, is to be defendant.

Plaintiff's argument breaks down at step one. Granting, at least for the sake of argument, that the filing of an action is a sufficient change in position to destroy the power to retract an anticipatory repudiation of a contract, plaintiff forgets that, logically or not, it is the general rule, recognized in this state, that the doctrine of breach by anticipatory repudiation does not apply to contracts which are unilateral in their inception or have become so by complete performance by one party. (*Cobb* v. *Pacific Mut. Life Ins. Co.,* 4 Cal.2d 565, 573 [51 P.2d 84]; *Minor* v. *Minor,* 184 Cal.App.2d 118, 122-126 [7 Cal.Rptr. 455]; *New York Life Ins. Co.* v. *Viglas,* 297 U.S. 672, 679-682 [80 L.Ed. 971, 976-977, 56 S.Ct. 615]; *Quick* v. *American Steel & Pump Corp.,* 397 F.2d 561, 564; *John Hancock Mut. Life Ins. Co.* v. *Cohen,* 254 F.2d 417, 427.) The theory underlying this rule is that since the plaintiff has no future obligations to perform, he is not prejudiced by having to wait for the arrival of the defendant's time

particular, with respect to the awarding of attorney's fees. *It is precisely the question of attorney's fees which has brought this case to the appellate level. . . ."* (Italics added.)

for performance in order to sue for breach. (*Minor* v. *Minor, supra,* 184 Cal.App.2d at p. 125; 1 Witkin, Summary of Cal. Law (1960) Contracts, § 273(a), p. 302.)[4]

It is quite evident that when defendant repudiated its obligation on December 4, the contract had become unilateral. Plaintiff and the members of his class had done all that they had ever been obligated to do, that is to pay the price of a season ticket. Nothing was left but for defendant to furnish the applications for the Rose Bowl tickets. The action, was, therefore, premature.

It is thus apparent that had plaintiff acted on his own behalf, defendant's offer to sell him a ticket to the Rose Bowl would have destroyed any cause of action he had and that a summary judgment in defendant's favor against him alone would have been proper. We see no reason to reach a different result just because plaintiff's premature action was brought on behalf of himself and 599 other people.

Plaintiff, who is most sincere and evidently quite knowledgeable in the field of class actions, earnestly urges upon us that this is a case of first impression involving many problems in this heady area which cry for judicial resolution. He points to the undeniable fact that when he filed his action 600 first time economy season ticket holders could look forward to spending $20 on the black market or New Year's day in front of a television set.[5] Thus, first and foremost, plaintiff would like to have us

---

[4]Professor Corbin is critical of the distinction between unilateral and bilateral contracts as a basis for not applying the doctrine of anticipatory repudiation to the former category. He has pointed out the logical inconsistency in permitting one who has not performed to sue, while denying the same right to a party who has fully performed. (4 Corbin on Contracts, § 962 et seq.)

[5]The trial court, in its minute order granting the summary judgment, specifically found that the "tickets were made available because of matters extraneous to plaintiff's lawsuit. Plaintiff has not attempted to overcome this showing . . ." Although plaintiff, somewhat wistfully, still feels that his lawsuit had something to do with the sudden availability of the tickets, there really has not been any showing to this effect. He claims that the Phillips declaration is defective, but no particulars are cited and none have been discovered by us. It has the ring of truth. (Cf. *Frye* v. *Felder,* 246 Cal.App.2d 136, 139-140 [54 Cal.Rptr. 627].) Plaintiff made no attempt to raise any factual issue with respect to the reason for defendant's sudden affluence in the matter of tickets. He suggests in his brief, without any support in the record, that the newly found tickets ". . . were probably taken from the ticket allotment for various big wigs, such as politicians, influential alumni, big contributors, and other persons with no contractual rights for Rose Bowl tickets but who were obviously favored over economy season ticket holders with the mere contractual rights asserted in the case at bar." Summary judgments should not be denied on such unfounded speculation. In any event, our decision is not based on the correctness of the superior court's acceptance of the Phillips declaration.

recognize that costs and attorney's fees to the successful representative of the class need not necessarily come out of a common fund created or preserved through his efforts. That, of course, was the holding of *Fletcher* v. *A. J. Industries, Inc.,* 266 Cal.App.2d 313, 318-325 [72 Cal.Rptr. 146], where, in essence, the beneficial result was a corporate reorganization and the corporation was ordered to pay the fees of the suing shareholders who had brought it about. (See also *Knoff* v. *City etc. of San Francisco,* 1 Cal.App.3d 184, 202-204 [81 Cal.Rptr. 683].) Plaintiff, however, would have us go one step further and hold that where the result is an application for a Rose Bowl ticket, the parties responsible for the fee are not those benefited by the litigation, but their opponents.[6]

Other questions raised by the plaintiff involve the privilege of a defendant to a class action to deal and settle with members of the class in any way except through its plaintiff-representative. It is also claimed that under circumstances similar to those in this case, it should be presumed that the favorable result was proximately caused by the action.

It is evident that if the questions raised by plaintiff have not yet been answered, some day they will have to be. We do not underestimate the importance of class actions as instruments of justice. Indeed it is our great respect for the value of class actions which persuades us that it would be unwise as well as improper for us to express any views on the issues raised by plaintiff in this particular action. We have, admittedly, taken the easy way out and decided to affirm on the basis of a simple principle of contract law. The day may come when that principle, which already is not universally admired (see fn. 5, *ante*) will be successfully questioned in another class action, similar in structure, but which presents major considerations of public policy which outweigh the social utility[7] of a technical exception to the doctrine of anticipatory breach. When that day comes, the court

---

[6]It is noted that plaintiff did not specifically request any equitable relief. He explains this by stating that it would have been impossible to obtain a judgment for specific performance in the few days between the filing of the action and January 1, 1969. This may be true, but we cannot help wondering whether a preliminary injunction enjoining the game unless tickets for the members of plaintiff's class were found, would not have been quite effective.

[7]Although legal writers have demonstrated the erroneous premise of the rule that the doctrine of anticipatory breach does not apply to unilateral contracts, the social utility of that particular quirk of contract law was discussed and demonstrated in *Minor* v. *Minor,* 184 Cal.App.2d 118, 126 [7 Cal.Rptr. 455].

concerned with the case can easily confine this decision to its own peculiar facts by noting that easy cases make bad law.

The judgment is affirmed.

Stephens, J., and Reppy, J., concurred.