[No. A033361. First Dist., Div. Five. Apr. 27, 1987.]

†MARK HARRIS et al., Plaintiffs and Appellants, v.
TIME, INC., Defendant and Respondent.

**[Opinion certified for partial publication.‡]**

†This opinion previously appeared at pages 465-479 and was moved to this space (pages 449-460) in place of the case deleted to accommodate the partial publication of the opinion following its appearance in full in the advance pamphlet.

‡Part I of this opinion is not ordered published, as it does not meet the standards for publication contained in California Rules of Court, rule 976 (b).

**COUNSEL**

Armando M. Menocal III and Sidney M. Wolinsky for Plaintiffs and Appellants.

James T. Fousekis, James F. Brelsford, Mark Herrmann and Steinhart & Falconer for Defendant and Respondent.

**OPINION**

**KING, J.**—In this action where plaintiffs suffered no damage or loss other than having been enticed by the external wording of a piece of bulk rate mail to open the envelope, believing that doing so would result in the receipt of a free plastic calculator watch, we hold that the maxim "the law disregards trifles" applies and dismissal of the action was proper on this ground.

Mark Harris, Joshua Gnaizda and Richard Baker appeal from a judgment of dismissal of this class action lawsuit arising from their receipt of a direct mail advertisement from Time, Inc. They contend the court erred when it sustained Time's demurrer as to a cause of action for breach of contract and granted summary judgment as to causes of action for unfair advertising. We affirm.

It all began one day when Joshua Gnaizda, the three-year-old son of a prominent Bay Area public interest attorney, received what he (or his mother) thought was a tantalizing offer in the mail from Time. The front of the envelope contained two see-through windows partially revealing the envelope's contents. One window showed Joshua's name and address. The

other revealed the following statement: "JOSHUA A. GNAIZDA, I'LL GIVE YOU THIS VERSATILE NEW CALCULATOR WATCH FREE Just for, Opening this Envelope Before Feb. 15, 1985." Beneath the offer was a picture of the calculator watch itself. Joshua's mother opened the envelope and apparently realized she had been deceived by a ploy to get her to open a piece of junk mail. The see-through window had not revealed the full text of Time's offer. Printed below the picture of the calculator watch, and not viewable through the see-through window, were the following additional words: "AND MAILING THIS CERTIFICATE TODAY!" The certificate itself clearly required that Joshua purchase a subscription to Fortune magazine in order to receive the free calculator watch.

As is so often true in life situations these days, the certificate contained both good news and bad news. The good news was that Joshua could save up to 66 percent on the subscription, which might even be tax deductible.[1] Even more important to the bargain hunter, prices might never be this low again. The bad news was that Time obviously had no intention of giving Joshua the versatile new calculator watch just for opening the envelope.

Although most of us, while murmuring an appropriate expletive, would have simply thrown away the mailer, and some might have stood on principle and filed an action in small claims court to obtain the calculator watch, Joshua's father did something a little different: he launched a $15 million lawsuit in San Francisco Superior Court.

The action was prosecuted by Joshua, through his father, and by Mark Harris and Richard Baker, who had also received the same mailer. We are not informed of the ages of Harris and Baker. The complaint alleged one cause of action for breach of contract, three causes of action for statutory unfair advertising, and four causes of action for promissory estoppel and fraud.

The complaint sought the following relief: (1) a declaration that all recipients of the mailer were entitled to receive the promised item or to rescind subscriptions they had purchased,[2] (2) an injunction against future similar

---

[1] The record does not disclose whether Joshua could take advantage of the tax deductibility feature.

[2] No claim is made that Time did not provide a free calculator watch to each person who subscribed to Fortune magazine.

mailings, (3) compensatory damages in an amount equal to the value of the item, and (4) $15 million punitive damages to be awarded to a consumer fund "to be used for education and advocacy on behalf of consumer protection and enforcement of laws against unfair business practices."

The complaint also alleged that before commencing litigation, Joshua's father demanded that Time give Joshua a calculator watch without requiring a subscription. Time not only refused to give a watch, it did not even give Joshua or his father the time of day. There was no allegation that Harris or Baker made such a demand on Time.

Time demurred to the entire complaint for failure to state facts sufficient to constitute a cause of action. The court sustained the demurrer as to the causes of action for breach of contract, promissory estoppel and fraud, but overruled the demurrer as to the causes of action for unfair advertising.

However, Time subsequently obtained summary judgment on the causes of action for unfair advertising. Based on the orders sustaining the demurrer and granting summary judgment, the court rendered a judgment of dismissal.

Plaintiffs filed a notice of appeal after the court granted summary judgment, but two days before rendition of the judgment itself. We treat the notice of appeal as filed immediately after entry of judgment. (Cal. Rules of Court, rule 2(c).)

·The appeal challenges the dismissal only as to the causes of action for breach of contract and unfair advertising. Plaintiffs state in their opening brief that they abandon the causes of action for promissory estoppel and fraud.

I\*

. . . . . . . . . . . . . . . . . .

---

\*See footnote, *ante,* page 449.

## II

### Breach of Contract

In sustaining the demurrer as to the cause of action for breach of contract, the court stated no specific grounds for its ruling. Time had argued the complaint did not allege an offer, did not allege adequate consideration, and did not allege notice of performance by the plaintiffs. On appeal, plaintiffs challenge each of these points as a basis for dismissal.

### A.   Offer.

█ On the first point, Time argues there was no contract because the text of the unopened mailer amounted to a mere advertisement rather than an offer.

█ It is true that advertisements are not typically treated as offers, but merely as invitations to bargain. (1 Corbin on Contracts (1963) § 25, pp. 74-75; Rest.2d, Contracts, § 26, com. b, at p. 76.) There is, however, a fundamental exception to this rule: an advertisement can constitute an offer, and form the basis of a unilateral contract, if it calls for performance of a specific act without further communication and leaves nothing for further negotiation. (*Lefkowitz* v. *Great Minneapolis Surplus Store* (1957) 251 Minn. 188 [86 N.W.2d 689, 691]; 1 Corbin on Contracts (1963) §§ 25, 64, pp. 75-76, 264-270; Rest.2d, Contracts, § 26, com. *b*, at p. 76.) This is a basic rule of contract law, contained in the Restatement Second of Contracts and normally encountered within the first few weeks of law school in cases such as *Lefkowitz* (furs advertised for sale at a specified date and time for "$1.00 First Come First Served") and *Carlill* v. *Carbolic Smoke Ball Co.* (1893) 1 Q.B. 256 (advertisement of reward to anyone who caught influenza after using seller's medicine). (See, e.g., Murphy & Speidel, Studies in Contract Law (3d ed. 1984) pp. 112, 154.)

█ The text of Time's unopened mailer was, technically, an offer to enter into a unilateral contract: the promisor made a promise to do something (give the recipient a calculator watch) in exchange for the performance of an act by the promisee (opening the envelope). Time was not in the same position as a seller merely advertising price; the proper analogy is to a seller

promising to give something to a customer in exchange for the customer's act of coming to the store at a specified time. (*Lefkowitz* v. *Great Minneapolis Surplus Store, supra,* 86 N.W.2d 689.)

### B. Consideration.

Time also argues that there was no contract because the mere act of opening the envelope was valueless and therefore did not constitute adequate consideration. Technically, this is incorrect. It is basic modern contract law that, with certain exceptions not applicable here (such as illegality or preexisting legal duty), *any* bargained-for act or forbearance will constitute adequate consideration for a unilateral contract. (Rest.2d, Contracts, § 71; see 1 Witkin, Summary of Cal. Law (8th ed. 1973) Contracts, §§ 162-169, pp. 153-162.) Courts will not require equivalence in the values exchanged or otherwise question the adequacy of the consideration. (*Schumm* v. *Berg* (1951) 37 Cal.2d 174, 185 [231 P.2d 39, 21 A.L.R.2d 1051]; Rest.2d, Contracts, § 79.) If a performance is bargained for, there is no further requirement of benefit to the promisor or detriment to the promisee. (Rest.2d, Contracts, § 79, coms. *a & b* at pp. 200-201.)

Moreover, the act at issue here—the opening of the envelope, with consequent exposure to Time's sales pitch—may have been relatively insignificant to the plaintiffs, but it was of great value to Time. At a time when our homes are bombarded daily by direct mail advertisements and solicitations, the name of the game for the advertiser or solicitor is to *get the recipient to open the envelope.* Some advertisers, like Time in the present case, will resort to ruse or trick to achieve this goal. From Time's perspective, the opening of the envelope was "valuable consideration" in every sense of that phrase.

Thus, assuming (as we must at this juncture) that the allegations of the complaint are true, Time made an offer proposing a unilateral contract, and plaintiffs supplied adequate consideration for that contract when they performed the act of opening the envelope and exposing themselves to the sales pitch within.

### C. Notice of Performance.

Although there was an offer with technical consideration, Time had no means of learning of the acceptance by performance. Thus the recipients

of the offer were required to provide Time with notice of their performance within a reasonable period of time. Absent such notice, Time could treat the offer as having lapsed before acceptance. (Cal. U. Com. Code, § 2206, subd. (2); Rest.2d, Contracts, § 54, com. *b*, p. 137.)[4] The complaint alleged Joshua Gnaizda gave Time notice of his performance before commencing litigation, but contained no such allegation as to coplaintiffs Harris and Baker. Thus, as Time correctly contends, the complaint failed to state a cause of action for breach of contract as to Joshua's coplaintiffs.[5]

Plaintiffs argue that because the complete contents of Time's mailer indicated the recipient would not receive a calculator watch without subscribing to Fortune magazine, there was an anticipatory breach of the unilateral contract, so that the recipient should not have been obligated to give notice of performance. ■ Appellate decisions in California, however, have taken the approach that the doctrine of anticipatory breach—by which an anticipatory repudiation will support an action for breach of contract without further performance by the plaintiff—is not applicable to unilateral contracts. (*Cobb* v. *Pacific Mutual Life Ins. Co.* (1935) 4 Cal.2d 565, 573 [51 P.2d 84]; *Diamond* v. *University of So. California* (1970) 11 Cal.App.3d 49, 53 [89 Cal.Rptr. 302]; *Minor* v. *Minor* (1960) 184 Cal.App.2d 118, 122-126 [7 Cal.Rptr. 455].) The rationale is that the aggrieved party has already fully performed and would not be harmed by awaiting counterperformance at the time promised. (*Minor* v. *Minor, supra,* 184 Cal.App.2d at p. 125.)

Plaintiffs cite a treatise that soundly criticizes this approach; the commentator argues the aggrieved party has lost the ability to rely on a promise and plan accordingly. (2 Kaufman, Corbin on Contracts (1984 Supp.) § 962, p. 146.) According to the commentator, this approach "almost always operates in favor of the rich and powerful, and tramples on the poor and helpless." (*Id.,* at p. 147.) The most recent California decision to follow the challenged approach acknowledged these arguments and conceded, "The day may come when that principle . . . will be successfully questioned in another class action . . . which presents major considerations of public policy which

---

[4]The Uniform Commercial Code permits the offeror to treat the offer as "having lapsed before acceptance" (Cal. U. Com. Code, § 2206, subd. (2)), while the Restatement Second of Contracts states that "the contractual duty of the offeror is discharged" (Rest.2d, Contracts, § 54, subd. (2)).

[5]Plaintiffs Harris and Baker argue their complaint gave notice of the performance. Filing a lawsuit against one making an offer is certainly a peculiar method of accepting the offer.

outweigh the social utility of a technical exception to the doctrine of anticipatory breach." (*Diamond* v. *University of So. California, supra,* 11 Cal.App.3d at p. 55; citations omitted.)

The present case hardly raises the "major considerations of public policy" envisoned by *Diamond.* This is not a case of the rich and powerful trampling on the poor and helpless, but simply one of pique at being tricked into opening a piece of junk mail through the false promise of the gift of a cheap plastic calculator watch. A departure from precedent should occur only under compelling circumstances, and the present circumstances are anything but compelling. Moreover, we would seem to be bound by our Supreme Court's holding in *Cobb* v. *Pacific Mutual Life Ins. Co., supra,* 4 Cal.2d 565, that there can be no anticipatory breach of a unilateral contract. (*Auto Equity Sales, Inc.* v. *Superior Court, supra,* 57 Cal.2d at p. 455.) The reconsideration predicted by *Diamond* will have to await another day.

■    Under the admittedly tottering rule of *Cobb, Minor,* and *Diamond,* the complaint failed to state a cause of action for breach of contract as to Harris and Baker, for failure to allege notice of performance, though not as to Joshua.

### III

### CONCLUSION

■    As a final argument, Time claims the judgment of dismissal was correct based on the legal maxim "de minimis non curat lex," or "the law disregards trifles." (Civ. Code, § 3533.) In this age of the consumer class action this maxim usually has little value. However, the present action is "de minimis" in the extreme. This lawsuit is an absurd waste of the resources of this court, the superior court, the public interest law firm handling the case and the citizens of California whose taxes fund our judicial system. It is not a use for which our legal system is designed.

As a practical matter, plaintiffs' real complaint is that they were tricked into opening a piece of junk mail, *not* that they were misled into buying anything or expending more than the effort necessary to open an envelope. If Joshua's mother lost the initial skirmish in the battle of direct mail adver-

tising by opening the envelope, she could have won the war by simply throwing the thing away. If she were angry she might even have returned Time's business reply envelope empty, requiring Time to pay the return postage. If she felt particularly hostile, she might have inserted a nasty note or other evidence of her displeasure in the reply envelope. A $15 million lawsuit, filed in a superior court underfunded and already overburdened with serious felony prosecutions and complex civil litigation involving catastrophic injury from asbestos, prescription drugs and intrauterine devices, is a vast overreaction. The law may permit junk mail to be delivered for a lower cost than the individual citizen must pay. It does not require that the public subsidize junk litigation.

For many, an unpleasant aspect of contemporary American life is returning to the sanctity of one's home each day and emptying the mailbox, only to be inundated with advertisements and solicitations. Some days, among all of the junk mail, one is fortunate to be able to locate a bill, let alone a letter from a friend or loved one. Insult is added to injury when one realizes that individual citizens must pay first class postage rates to send their mail, while junk mail, for reasons apparent only to Congress and the United States Postal Service, is sent at less than one-half of that rate. The irritation level soars to new heights when, succumbing to the cleverness or ruse of the sender of junk mail and believing one is being offered something for nothing, one actually opens an envelope and examines its contents, both of which would otherwise been deposited unopened in their rightful place, the garbage can. Snake oil salesmen have been replaced by bulk rate advertisers whose wares must be causing our postal carriers' backs to be nearing the breaking point under the weight of such mail.

As much as one might decry this intrusion into our lives and our homes and sympathize with Joshua's plight, eliminating it lies with Congress, not the courts. The courts cannot solve every complaint or right every technical wrong, particularly one which causes no actual damage beyond the loss of the few seconds it takes to open an envelope and examine its contents. Our courts are too heavily overburdened to be used as a vehicle to punish by one whose only real damage is feeling foolish for having opened what obviously was junk mail.

We therefore affirm, despite the partial technical validity of the action, because the judgment is correct based on the "de minimis" theory. ■ A judgment that is correct on any theory will be affirmed even if the reasons stated by the trial court in support of the judgment were wrong. (*Davey* v. *Southern Pacific Co., supra,* 116 Cal. at p. 329.)

The judgment is affirmed. The parties shall bear their own costs on appeal.

Low, P. J., and Haning, J., concurred.