Filed 11/7/24  Tucker v. PNC Bank CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| FRED TUCKER, Individually and as Trustee, etc., <br><br> Plaintiff and Appellant, <br><br> v. <br><br> PNC BANK, N.A., <br><br> Defendant and Respondent. | B323708 <br><br> (Los Angeles County Super. Ct. No. YC070538) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Ronald F. Frank, Judge.  Affirmed.

Law Offices of Edward A. Hoffman, Edward A. Hoffman; and Fred Tucker, in pro. per., for Plaintiff and Appellant.

Wolfe & Wyman, Stuart B. Wolfe and Libby Wong for Defendant and Respondent.

# INTRODUCTION

This is a lawsuit over $1.16 ($7.71 with interest), the amount the undisputed admissible evidence showed was the possible discrepancy in the principal balance due on a loan by the predecessor to PNC Bank, N.A to Zula Tucker, Fred Tucker's mother. In 2015 Fred Tucker (Tucker), individually and as trustee of the Zula Tucker Living Trust, filed this action for breach of contract against PNC. Tucker alleged PNC wrongfully initiated foreclosure proceedings after overcharging Zula Tucker and the trust on the promissory note. The trial court granted PNC's motion for summary judgment. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

A. *Tucker, Successor in Interest to the Borrower, Defaults on a Promissory Note*

In 1988 Tucker's mother, Zula Tucker, signed a $375,000 promissory note secured by a deed of trust on property in Palos Verdes Estates, payable to the Florida Group, Inc. The interest rate on the note was adjustable, starting at 8.375 percent and adjusting annually, but never exceeding 14.375 percent.

In December 1989 Merchants Mortgage Corporation, the new owner of the loan, sent Zula Tucker a year-end statement of mortgage account stating the balance on the loan was $370,307.50. In February 1990 Tucker wrote to the Florida Group that he had calculated the amount Zula Tucker paid on the loan in 1988 and 1989, subtracted the amount of interest the Florida Group reported on two sets of Internal Revenue Service Forms 1098 for 1988 and 1999, and arrived at an amount that

2

was $22,376.51 less than the remaining balance on Merchants Mortgage's year-end statement. In March 1990 Marilyn Weingart, vice president of the Florida Group, responded to Tucker's letter, explaining that there was a discrepancy, but that the error was in the amount of interest reported on the Forms 1098, not the remaining principal listed on the year-end statement. Weingart enclosed an amortization schedule and corrected Forms 1098 for 1988 and 1989.

In 2006 Tucker learned that PNC was the successor to the note and deed of trust and that Quality Loan Service Corporation was the trustee and loan servicer for the loan. Also in 2006 Zula Tucker "deeded all of her interests" in the property subject to the promissory note and deed of trust to the Zula Tucker Living Trust, a revocable living trust. The trust named Tucker as the trustee. Zula Tucker died in 2012. In April 2015 Quality Loan Service recorded a notice of default stating that Tucker had not made any payments on the loan after May 2014 and that the past due amount, including costs and expenses, was $39,314.51.

B. *Tucker Files This Action*

In April 2015 Tucker filed this action. The trial court sustained PNC's demurrer to Tucker's third amended complaint without leave to amend. We reversed and directed the trial court to give Tucker leave to amend to allege a breach of contract cause of action based on breaches within the four-year statute of limitations period. (*Tucker v. PNC Bank, N.A.* (Jan. 14, 2019, B281921) [nonpub. opn.].)

In the operative fifth amended complaint Tucker alleged one cause of action for "breach of contract by wrongful foreclosure." Tucker alleged that in September 2015, "after

3

discovering cancelled checks and other important items" belonging to Zula Tucker, he "conducted the first full audit of the payments that were made on the Florida Group promissory note." Tucker alleged he "discovered that not all the loan payments had been fully credited, which resulted in a shortage of approximately $22,000.00," and that, "as a result of the failure to credit the payments, interest was overcharged."

Tucker attached to the complaint a September 2015 letter he wrote to counsel for PNC explaining Tucker's calculations (which were the same as those in his 1990 letter to the Florida Group) and identifying a discrepancy of $22,374.51 ($2 less than the discrepancy he claimed in 1990). Tucker also attached a May 2016 letter from Don Marshall, an accountant. Marshall stated that he had examined the payments and the Forms 1098 for 1989 and 1990 and that there was "a discrepancy in the amount of principal applied to the loan in the amount of $22,374.51." Marshall attached an amortization schedule, in which he compounded interest at 7.5 percent on $22,374.51 and concluded that as of April 2015, PNC had charged $148,711.69 in interest on the $22,374.51 discrepancy. Subtracting $103,717.71 (the outstanding balance stated on an April 16, 2015 monthly mortgage statement) from $148,711.69, Tucker claimed he had paid the note in full and that PNC owed him $44,993,98.

Tucker alleged that, for "the entire four year period before April 15, 2015, and continuing to the present, [PNC] breached the promissory note by continuously assessing, demanding and sending monthly billing statements to [Tucker] for payment of loan installment for sums that [Tucker] did not owe," by "knowingly and falsely claiming that [Tucker] is and has been in breach of the promissory note," and by "wrongfully persist[ing] in

4

their attempt to foreclose on and sell" the property where Tucker lived. Tucker sought damages and injunctive relief.

C.   *The Trial Court Grants PNC's Motion for Summary Judgment*

In 2021 PNC moved for summary judgment. PNC argued that Tucker did not have standing to sue for breach of the loan agreement because he was not a party to it; that PNC overcharged Tucker at most $7.71; and that, in a release agreement in 1995, Zula Tucker resolved any dispute regarding the unpaid principal balance by stipulating to the amount then due. In support of its motion PNC submitted the declaration of William Hardrick, a default litigation specialist for PNC, who stated that the 1989 year-end statement overstated the remaining principal balance on the note by only $1.16 and that compounding interest on that amount annually at 7.5 percent resulted in a total of $7.71.

In opposition to the motion, Tucker restated his theory that, because the Florida Group miscalculated the principal remaining in 1988 and 1989, the loan was paid in full and PNC owed him $44,993.98. Tucker also argued the release agreement between Zula Tucker and Merchants Mortgage Corporation did not apply to the current dispute. Tucker submitted Marshall's May 2016 letter that concluded PNC had overcharged Tucker by $148,711.69 as of April 2015 and by $159,261.19 as of April 2016.

The trial court sustained PNC's objection to Marshall's letter. The court stated the letter "lacks proper foundation, it is not under penalty of perjury, and it purports to assert expert opinions tantamount to a retrospective audit of historical

5

payments but not in the form of admissible evidence such as a declaration or excerpts from a deposition."

The court granted PNC's motion for summary judgment. The court ruled that, according to Hardrick, "the historical amount owed could be as much as $1.16, which if compounded at 7.75% would yield a total of $7.71. . . .  Such a discrepancy would be de minimis, would be insubstantial, and does not raise a 'material' issue of disputed fact."  The court ruled neither the Forms 1098 nor Tucker's other evidence created a triable issue of material fact.  Tucker filed an ex parte application for reconsideration, which the court denied.  The court entered judgment for PNC, and Tucker timely appealed.

## DISCUSSION

A.    *Applicable Law and Standard of Review*

"'A court may grant a motion for summary judgment or summary adjudication "only when 'all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'"'" (*Childhelp, Inc. v. City of Los Angeles* (2023) 91 Cal.App.5th 224, 241; see Civ. Proc. Code, § 437c, subd. (c); *Regents of University of California v. Superior Court* (2018) 4 Cal.5th 607, 618.)  "'A defendant seeking summary judgment must show that the plaintiff cannot establish at least one element of the cause of action.'"  (*Fajardo v. Dailey* (2022) 85 Cal.App.5th 221, 225; see *Long Beach Memorial Medical Center v. Allstate Ins. Co.* (2023) 95 Cal.App.5th 710, 715.)

Once the defendant carries its initial burden, "the burden shifts to the plaintiff to demonstrate, by reference to specific

6

facts, not just allegations in the pleadings, there is a triable issue of material fact as to the cause of action. [Citations.] 'There is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof' at trial." (*Esplanade Productions, Inc. v. The Walt Disney Co.* (2023) 93 Cal.App.5th 793, 805; see *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850.)

""""""We review the trial court's decision de novo, considering all the evidence set forth in the moving and opposing papers except that to which objections were made and sustained."' [Citation.] We liberally construe the evidence in support of the party opposing summary judgment and resolve doubts concerning the evidence in favor of that party.""" (*Hampton v. County of San Diego* (2015) 62 Cal.4th 340, 347; see *Long Beach Memorial Medical Center v. Allstate Ins. Co.*, *supra*, 95 Cal.App.5th at p. 716.)

B. *The Trial Court Did Not Err in Granting PNC's Motion for Summary Judgment*

The "elements of a cause of action for breach of contract are (1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff." (*Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 821; see *Miles v. Deutsche Bank National Trust Co.* (2015) 236 Cal.App.4th 394, 402.) Tucker argues PNC breached the promissory note by charging interest on the overstated 1989 balance for the next 25 years and by attempting to foreclose on the property even though Tucker had (more than) repaid the loan in full.

7

PNC met its initial burden on summary judgment to show it did not breach the promissory note. In his declaration Hardrick stated he reviewed the promissory note and Zula Tucker's payments on the loan in 1988 and 1989. Using that information, Hardrick calculated the portion of each monthly payment allocated to principal, the portion allocated to interest, and the balance remaining after each payment. Hardrick concluded the 1989 year-end statement of mortgage overstated the principal balance by $1.16, which by 2015 grew to $7.71 with interest compounded annually at 7.5 percent.

The trial court did not err in ruling a potential overcharge of $7.71 on a $375,000 loan was a trivial discrepancy that did not constitute a breach of contract. "The law disregards trifles." (Civ. Code, § 3533; see *Troester v. Starbucks Corp.* (2018) 5 Cal.5th 829, 843 ["'The maxim signifies "that mere trifles and technicalities must yield to practical common sense and substantial justice" so as "to prevent expensive and mischievous litigation, which can result in no real benefit to complainant, but which may occasion delay and injury to other suitors."'"]; *Lueras v. BAC Home Loans Servicing, LP* (2013) 221 Cal.App.4th 49, 79 ["Time and effort spent assembling materials for an application to modify a loan is the sort of nominal damage subject to the *maxim de minimis non curat lex*—i.e., the law does not concern itself with trifles."], italics in original; see, e.g., *In re Marriage of Crook* (1992) 2 Cal.App.4th 1606, 1609 & fn. 2 [declining to correct a de minimis discrepancy of $2.38 in monthly pension benefit of $589.65]; *Harris v. Time, Inc.* (1987) 191 Cal.App.3d 449, 458 [affirming an order dismissing a class action alleging the plaintiffs were tricked into opening a piece of junk mail because the action was "'de minimis' in the extreme" and "an absurd

8

waste of the resources" of the court]; *Schertzer v. Bank of America, N.A.* (S.D.Cal. 2020) 445 F.Supp.3d 1058, 1085 [affirming an order dismissing a breach of contract claim involving rounding of transaction fees and ruling "the $0.18 amount at issue in [the plaintiff's] claim to be *de minimis*, and any injuries to members of the putative class are likely to be similarly trifling"].)

None of Tucker's evidence would allow a reasonable trier of fact to find PNC overcharged him by a nontrivial amount. Tucker submitted the letter from Marshall stating PNC charged $159,261.19 more than it should have, but as discussed, the trial court sustained PNC's evidentiary objections to the letter, and Tucker does not challenge that ruling. Tucker also submitted correspondence where he, his mother, and their attorney told the Florida Group and Merchants Mortgage the IRS had not received the corrected Forms 1098 and asked the lenders to deduct "the discrepancy amount" of $27,000 from the principal balance. Tucker argues PNC's "inconsistent statements" in the two sets of Forms 1098 created a triable issue of material fact regarding whether PNC misstated the principal balance at the end of 1989.

The Forms 1098 did not create a triable issue of material fact. Tucker does not dispute that in 1990 the Florida Group sent him corrected Forms 1098 and an amortization schedule showing how the lender applied Zula Tucker's payments to principal and interest. In fact, in a letter to Merchants Mortgage in 1991, Tucker's attorney stated, "Mr. Tucker has now checked and agrees with the interest correction." Tucker did not submit any evidence the new Forms 1098 or the amortization schedule were incorrect. Nor did Tucker submit any evidence contradicting Hardrick's declaration explaining how each payment was applied

9

to principal and interest and concluding the 1989 year-end statement correctly stated the principal balance within a margin of error of $1.16.

In any event, any failure by the Florida Group to file accurate Forms 1098 or to file the corrected forms with the IRS would not affect the contractual obligations between Tucker and PNC. The purpose of a Form 1098 is to "'assist the [IRS] in verifying the accuracy of claimed mortgage interest deductions.'" (*Pemberton v. Nationstar Mortgage LLC* (S.D.Cal. 2018) 331 F.Supp.3d 1018, 1031.)[1] A lender's obligation to report interest to the IRS is not a term of a promissory note between a lender and a borrower, and a lender's violation of its reporting requirement is not a breach of that contract. (See *id.* at p. 1036 [title 26 United States Code section 6050H "is neither an express, nor implied term of the [borrowers'] contract and the [borrowers] cannot plausibly assert a breach of contract claim" against the lender for underreporting interest on a Form 1098]; *Rovai v. Select Portfolio Servicing, Inc.* (S.D.Cal., June 27, 2018, No. 14-cv-1738-BAS-WVG) 2018 WL 3140543, p. 5 [same].)

Tucker argues that, even if PNC overcharged him by only $7.71, that was enough to defeat PNC's motion for summary

---

[1] Title 26 of the United States Code section 6050H "requires any individual who receives interest aggregating over $600 on a mortgage in a given year from another individual to furnish the Internal Revenue Service . . . with an information return identifying the amount of interest received. . . . By regulation, the interest recipient meets its statutory obligations by providing the IRS and the interest provider with a Form 1098." (*Pemberton v. Nationstar Mortgage LLC, supra*, 331 F.Supp.3d at pp. 1031-1032; see 26 C.F.R. § 1.605H-2 (2024).)

judgment.  Tucker contends that, de minimis non curat lex notwithstanding, a judgment "*will* be reversed if granting or withholding nominal damages could determine which party prevailed for purposes of awarding costs or attorney fees." Tucker asserts the judgment in favor of PNC "has exposed him to claims for attorney fees and costs by PNC" as the prevailing party,[2] but that "if the case proceeds to a judgment on the merits and results in a judgment in [Tucker's] favor, even for just $7.[7]1," the court may find he is the prevailing party.  Although Tucker generally describes the law regarding nominal damages correctly, it does not apply here.

A "'plaintiff is entitled to recover nominal damages for the breach of a contract, despite inability to show that actual damage was inflicted upon him'" because "'failure to perform a contractual duty is, in itself, a legal wrong that is fully distinct from the actual damages.'" (*Elation Systems, Inc. v. Fenn Bridge LLC* (2021) 71 Cal.App.5th 958, 965-966; see Civ. Code, § 3360 ["When a breach of duty has caused no appreciable detriment to the party affected, he may yet recover nominal damages."]; *Elation Systems*, at pp. 965-966 [where the jury found the defendant breached a nondisclosure agreement but the plaintiff did not suffer damage, the plaintiff could still recover nominal damages]; *Sweet v. Johnson* (1959) 169 Cal.App.2d 630, 632-633 [where the defendant breached a contract to develop real property but the plaintiff's damages were speculative, the trial court should have awarded nominal damages].)  "'Failure to

---

[2]     PNC filed a memorandum of costs and a motion for attorneys' fees, but the trial court granted Tucker's ex parte application to stay the action, including the hearing on PNC's motion for attorneys' fees, until this appeal has concluded.

11

return a verdict for nominal damages is not in general ground for reversing a judgment or granting a new trial.'" (*Staples v. Hoefke* (1987) 189 Cal.App.3d 1397, 1406; accord, *Sweet*, at p. 633.) But failure to award nominal damages is reversible error "where nominal damages would provide an 'absolute entitlement to costs.'" (*Elation Systems*, at p. 967.)

That rule has no bearing here. This is not a case where the plaintiff proves the defendant breached the contract but fails to prove the breach caused any actual damages. Tucker did not prove a breach. The evidence showed that, because PNC accurately charged interest within a trivial margin of error, Tucker could not prove PNC breached the promissory note.

In addition, even if Tucker could prove PNC breached the promissory note, summary judgment was appropriate because Tucker could not prove another element of his cause of action for breach of contract. The undisputed evidence showed Tucker defaulted on the promissory note in April 2015. Tucker could not prove he performed or was excused from performing his obligation to make payments on the promissory note. (See *Hamilton v. Greenwich Investors XXVI, LLC* (2011) 195 Cal.App.4th 1602, 1614 [trial court properly sustained a lender's demurrer without leave to amend where "conspicuously absent from the complaint is any allegation that plaintiffs performed under the forbearance agreement or that they were excused from performing"]; *Durell v. Sharp Healthcare* (2010) 183 Cal.App.4th 1350, 1367 ["'[I]t is elementary that one party to a contract cannot compel another to perform while he himself is in default.'"].)

Finally, even if PNC overcharged Tucker by $7.71, that amount (or an award of nominal damages) would be offset by the

much larger amount Tucker owed PNC on the promissory note, as PNC asserted in its eighth affirmative defense.  (See Code Civ. Proc., § 431.70 ["[w]here cross-demands for money have existed between persons . . . and an action is thereafter commenced by one such person, the other person may assert in the answer the defense of payment in that the two demands are compensated so far as they equal each other"]; *Construction Protective Services, Inc. v. TIG Specialty Ins. Co.* (2002) 29 Cal.4th 189, 198 [under Code of Civil Procedure section 431.70 a defendant may "assert the setoff defensively to defeat the plaintiff's claim in whole or in part"]; *Morris Cerullo World Evangelism v. Newport Harbor Offices & Marina, LLC* (2021) 67 Cal.App.5th 1149, 1159 ["The right to a setoff is based on the equitable principle that when parties in litigation hold cross-demands for money, one demand should be applied against the other and the plaintiff may recover the balance due, if any."]; see also *Nymark v. Heart Fed. Savings & Loan Assn.* (1991) 231 Cal.App.3d 1089, 1095 [in a foreclosure action, the plaintiff properly argued "'the damages proximately caused by [defendant] . . . could possibly exceed the balance of [plaintiff's] indebtedness under the promissory note'"].)

## DISPOSITION

The judgment is affirmed.  PNC's motion for judicial notice of the order staying the hearing on PNC's motion for attorneys' fees is granted and otherwise denied as unnecessary.  PNC is to recover its costs on appeal.

SEGAL, J.

We concur:

MARTINEZ, P. J.

FEUER, J.

14