Stephan RIESS and Thelma McKinney Riess, Appellants and Cross-Appellees,

v.

C. W. MURCHISON and Simi Valley Development Company, Appellees and Cross-Appellants.

No. 18198.

United States Court of Appeals Ninth Circuit.

March 17, 1964.

Loeb & Loeb, Alden G. Pearce, Frank E. Feder, and Robert A. Holtzman, Los Angeles, Cal., for appellants and cross-appellees.

Walter Ely, Los Angeles, Cal., for appellee and cross-appellant C. W. Murchison.

Stuart L. Kadison, Los Angeles, Cal., for appellee and cross-appellant Simi Valley Development Co.

Before HAMLEY and KOELSCH, Circuit Judges, and MacBRIDE, District Judge.

MacBRIDE, District Judge.

This is a diversity action involving a land sale contract.

Stephan Riess and Thelma McKinney Riess (referred to herein as the sellers) entered into a contract with C. W. Murchison, who subsequently assigned to Simi Valley Development Company (referred to herein as the buyers) for the sale of certain real estate, namely: A three and one-half acre parcel of land in the Simi Valley in Ventura County, California, on which were located a number of wells (referred to herein as the water lands) and, in addition, approximately three hundred subdivided lots in the same area (referred to herein as the additional lands).

The contract consisted of two separate letters from C. W. Murchison to Stephan Riess, dated September 13, 1955, and June 12, 1956, constituting a single integrated agreement, under which: (1) The sellers were to convey the water lands and the additional lands to the buyers on June 12, 1956, (referred to herein as the consummation date). (2) The buyers were to deliver one-sixth of the common stock of the Simi Valley Development Company to the buyers on the consummation date. (3) The buyers were to pay the sellers $1,000,000 as follows: $50,000 was to be paid on the consummation date.

$24,000 was to be paid in each of the two years immediately following the consummation date. No fixed time was set for payment of the balance; it was to be paid at the rate of ten cents per 1,000 gallons of water produced, saved, and sold from the water lands, provided, however, that if during any year the amount payable at this rate should be less than $24,000, the sellers were to be entitled to take the difference in water at the rate of twenty cents per 1,000 gallons, though if the buyers should elect to pay the difference in money, they might do so. (4) "Subject to" the physical ability of the water on the water lands to adequately service certain other lands which were owned by the buyers and which were to be developed for residential and commercial uses (referred to herein as the Montgomery lands), the buyers were to build or install a reservoir and pipelines on the water lands to transmit water taken therefrom to the nearest boundaries of the Montgomery lands by June 12, 1958. In case of a disagreement as to the sufficiency of the water on the water lands to adequately service the Montgomery lands, the question was to be submitted to arbitration. (5) The buyers were to have the right at any time to reconvey the water lands to the sellers and terminate the contract and their future obligations thereunder, if, in their opinion, the water on the water lands should no longer be capable of producing water in quantities sufficient to be commercially profitable to them.

Pursuant to the contract the sellers conveyed the water lands and the additional lands to the buyers on the consummation date. They have performed all the material covenants and conditions on their side of the contract.

During the fourteen months prior to the consummation date, the buyers paid the sellers $28,000 in fourteen monthly installments of $2,000 each (referred to herein as the voluntary payments). The contract recites that this amount should be a "credit on the purchase price." On or about the consummation date, the buy-ers paid an additional $50,000 to the sellers, and they delivered one-sixth of the common stock of Simi Valley Development Company to the sellers.

During the fifteen months immediately following the consummation date, the buyers paid the sellers $30,000 in fifteen monthly installments of $2,000 each. Thereafter, the buyers refused to make any further monthly payments, contending that the voluntary payments ($28,-000) should be credited against the balance due for the last nine months of the first two year period ($18,000), thereby satisfying such balance and creating an overpayment of $10,000.

Subsequently, during certain meetings between the sellers and the buyers, and in certain correspondence and conversations between them, concerning future performance by the buyers under the contract, the buyers expressed some unwillingness to comply exactly with the terms of the contract. Whether the buyers actually repudiated the contract is in dispute.

The buyers did not build or install the reservoir and pipelines on the water lands by June 12, 1958, as promised, though they did build and install them at a later date before trial. They asserted that the water on the water lands was insufficient to adequately service the Montgomery lands and that, therefore, the condition to their duty to build or install the reservoir and pipelines by that date did not occur.

The buyers have not paid the sellers at the contract rate for water produced, saved, and sold by them from the water lands, though between the consummation date and the date of trial they did produce, save, and sell water therefrom.

The buyers have never exercised their right under the contract to terminate the contract for insufficiency of the water on the water lands.

On October 8, 1958, the sellers brought the present action in the District Court. They demanded a jury trial. At trial

they proceeded on the theory that the buyers committed total breach of the contract by failing to perform their duties thereunder and by unequivocally repudiating such duties.

Before and during the trial, the buyers sought to enforce the contract's arbitration clause. They made a number of motions to stay the proceedings pending arbitration of the question of the sufficiency of the water on the water lands to adequately service the Montgomery lands. The District Court denied such motions on the ground that the question of sufficiency was not material to the case.

After three days of trial to a jury, during which time Stephan Riess was the only witness, the District Court ruled as a matter of law that at the times here relevant the contract was not susceptible to total breach and that consequently the sellers could recover only their actual damages for partial breach. The amount of the actual damages having been stipulated, the court held that no issue of fact remained for the jury, and accordingly it dismissed the jury.[1]

The District Court then proceeded to make findings of fact and conclusions of law. It held that the buyers committed partial breaches of the contract: The court held that the buyers breached by paying only $30,000, instead of $48,000, during the two years immediately following the consummation date; in this connection, it held that the voluntary payments of $28,000 made prior to the consummation date should be credited against monies to become due under the contract after trial, not against the $48,000 due during such first two years. The court also held that the buyers' duty to build or install the reservoir and pipelines on the water lands by June 12, 1958, was absolute, not conditional, and, therefore, that their failure to build or install them by that date constituted a breach, regardless of the sufficiency of the water on the water lands to adequately service the Montgomery lands. The court further held that the buyers breached by failing to pay the sellers at the contract rate for water produced, saved, and sold by them from the water lands.

With respect to the question of total breach, the District Court held that the contract was not susceptible to total breach at the times here relevant, and it found that even if it had been, still in fact the buyers did not commit total breach, by repudiation or otherwise. Accordingly, the District Court entered judgment for the sellers, but awarded them only actual damages for partial breach. Both sides appeal. The questions raised by the appeals are considered below.

1. Did the District Court err in ruling as a matter of law that the contract was not susceptible to total breach at the times here relevant? For the reasons stated below, we hold that the ruling was erroneous, though we express no opinion as to whether in fact the buyers did commit total breach, by repudiation or otherwise.

■■ The District Court, after stating its legal ruling that the contract was not susceptible to total breach, proceeded to make findings of fact and found, among other things, that even if the contract had been subject to total breach, still the buyers did not repudiate it and did not commit total breach. We feel that this finding was merely gratuitous and should be disregarded on this appeal, for in a case such as this, where the trial court has taken an issue from the jury,[2]

---

1. The parties stipulated that the sellers' damages were $25,000. The court had previously ruled, as a matter of law, that the sellers were also entitled to $18,000 in connection with the first breach referred to below.

2. After stating its legal ruling with respect to the question of total breach, the District Court ruled that further evidence as to whether the buyers repudiated the contract would not be admitted, and it rejected an offer of proof by the sellers on that

the appellate court should consider only questions of law with respect to that issue. See 5 C.J.S. Appeal & Error § 1469 (1958). Cf. West Coast Products Corp. v. Southern Pac. Co., 226 F.2d 830, 832 (9th Cir. 1955).

■ It is undisputed that, for purposes of the legal question stated above, the substantive law of California governs. Erie Ry. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); Klaxon v. Stentor Mfg. Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Calif.Civ.Code, § 1646; Blair v. New York Life Ins. Co., 40 Cal.App.2d 494, 104 P.2d 1075 (1940). Under the California cases, as we read them, the controlling rule is as follows: A breach of contract which, by itself, would be considered partial may be total if it is accompanied by unequivocal repudiation of the whole contract (Gold Min. & Water Co. v. Swinerton, 23 Cal.2d 19, 142 P.2d 22 (1943); Restatement of Contracts, § 317 (1932); 5 Williston on Contracts, § 1329 (1937)), provided, however, that if the contract is a unilateral contract "for future payments of money only" (John Hancock Mutual Life Ins. Co. v. Cohen, 254 F.2d 417 (9th Cir. (1958)), or "for the performance of other acts not connected with one another" (Restatement of Contracts, § 316 (1932)), then such a breach can only be partial, even if it is accompanied by unequivocal repudiation of the whole contract. Compare Coughlin v. Blair, 41 Cal.2d 587, 599, 262 P.2d 305 (1953) and Gold Min. & Wat. Co. v. Swinerton, supra, with Cobb v. Pacific Mutual Life Ins. Co., 4 Cal.2d 565, 51 P.2d 84 (1935); Flinn &

Treacy v. Mowry, 131 Cal. 481, 63 P. 724, 1006 (1901); John Hancock Mutual Life Ins. Co. v. Cohen, supra; Minor v. Minor, 184 Cal.App.2d 118, 7 Cal.Rptr. 455 (1960). See particularly the discussion in Minor v. Minor, supra, 184 Cal.App.2d at p. 124, 7 Cal.Rptr. 455, distinguishing between contracts involving merely the payment of money and contracts for the performance of acts. But cf. Clarey v. Security Portland Cement Co., Inc., 99 Cal.App. 783, 279 P. 483 (1929) semble.

■■ Applying the above rule to the present case, we conclude that at the times here relevant the contract in question was unilateral,[3] but it was not a unilateral contract "for future payments of money only" or "for the performance of acts not connected with one another," and, therefore, it was susceptible to total breach.

■ The present contract was not at the revelant times, one "for future payments of money only." Under it, in addition to being obligated to pay money at a rate measured by production, the buyers were conditionally obligated to perform certain acts, including the building or installing of a reservoir and pipelines on the water lands by June 12, 1958. Compare Cobb v. Pacific Mutual Life Ins. Co., supra; Flinn & Treacy v. Mowry, supra; John Hancock Mutual Life Ins. Co. v. Cohen, supra; Minor v. Minor, supra. The fact that the buyers' duty to perform such acts is conditional and that such duty *may* have been discharged by nonoccurrence of the condition thereto does not necessarily make the contract one for the payment of money only; the

issue, stating, "I am now holding that even though you could prove all the statements made in the offer of proof, they are immaterial because the doctrine of total breach in this case does not apply." Clerk's Transcript, p. 275. See Reporter's Transcript, p. 464.

3. It was a bilateral contract which became unilateral by performance on one side. It does not matter, in this connection, that the sellers are still subject

to some outstanding conditional obligations under the contract, because such obligations are not material; there is no interdependency between them and the obligations of the buyers presently in question. The sellers have performed all the material covenants and conditions on their side of the contract. See Cobb v. Pacific Mutual Life Ins. Co., supra, 4 Cal.2d 573, 51 P.2d 84; 5 Williston on Contracts, § 1328 (Revised Ed. 1937).

question, which is one this Court may not decide on the present appeal, is whether such duty in fact was discharged and, if so, whether it was discharged when the buyers allegedly breached and repudiated the contract.

Nor was the contract one "for the performance of acts not connected with one another." The acts provided for by it are so interrelated that a breach with respect to any one of them might, depending on the circumstances, have been material to the whole contract. In this connection, the holding of the California Supreme Court in Gold Min. & Wat. Co. v. Swinerton, 23 Cal.2d 19, 142 P.2d 22 (1943), supra, is pertinent.

In Swinerton the California Supreme Court held that where the rights of a promisee depend on the diligence of the promisor in performing his contractual obligations and the promisor breaches and unequivocally repudiates such obligations, the promisee may bring an action for total breach, even though the contract is unilateral. Swinerton involved a unilateral mining lease under which the lessees were to produce minerals and pay royalties therefrom, and under which the lessor's sole right was to receive such royalties. The lessees repudiated their obligation to produce minerals. The California Supreme Court held that such repudiation gave the lessor a present cause of action for total breach, even though the lease was unilateral. The rationale underlying the Swinerton holding was fairness to the lessor; the lessor's rights under the lease depended entirely on the diligence of the lessees, and the lessees had clearly indicated that they were not going to perform diligently, and consequently the lessor could not properly be left to its rights under the lease. See Coughlin v. Blair, supra, 41 Cal.2d at p. 599, 262 P.2d 305, discussing Swinerton.

Although the present case is not as strong a case as Swinerton, because here the rights of the sellers under the contract are not totally dependent on the diligence of the buyers, still they are partially dependent thereon; and, under the Swinerton rationale, such partial dependence is, we feel, sufficient to establish the requisite connection among the acts provided for by the contract. Such partial dependence consists of this: With respect to the balance due after the first two year period, the time for payment and the manner of payment depend on the rate of production and sale of water from the water land, and such production and sale are themselves dependent upon the building or installing of a reservoir and pipelines on the water lands.[4]

We note that in their briefs the parties discussed the question of total breach in terms of the doctrine of total breach by anticipatory repudiation. We have not discussed it in such terms, because we feel that the present case is not one in which the promisees (the sellers) must rely on that doctrine to establish total breach; for, according to their statement of the case, and the District Court's findings of fact, the buyers had already committed actual partial breaches when they allegedly repudiated, and anticipatory breach becomes an issue only when the promisee repudiates "before he has committed a breach." Restatement of Contracts, § 318 (1948 Supp.). See Gold Min. & Wat. Co. v. Swinerton, 23 Cal.2d 19, 20, 142 P.2d 22, supra. "(I)t is often thought that to allow a plaintiff to sue and recover full damages after some performance by the defendant has become due, but before the time for the completion of all his performance, is to allow the doctrine of anticipatory breach, yet this is not the case." Williston on Contracts, § 1317 (Revised Ed. 1937).[5]

4. See Reporter's Transcript, pp. 103–105, 160–162.

5. Certain of the cases involving or discussing anticipatory breach are, nevertheless, pertinent by analogy and, consequently, have been referred to herein.

2. Should the voluntary payments of $28,000 made prior to the consummation date have been credited against the $48,000 due under the contract during the first two years after the consummation date? The District Court held that it should not be credited against the $48,000, and we agree.

The contract provides, with respect to the voluntary payments, that such payments "shall be, of course, a credit on the purchase price of said water lands and other lands." This language appears in the second of the two letters from C. W. Murchison to Stephan Riess; we agree with the interpretation placed on it by the District Court. Again, California law governs. Erie Ry. Co. v. Tompkins, supra; Klaxon v. Stentor Mfg. Co., supra. Calif.Civ.Code, § 1646; See 11 Cal.Jur.2d, "Conflict of Laws," § 60.

▉ As a general rule words in a contract are construed more strongly against the party who used them, and the words here in question presumably were chosen and used by C. W. Murchison. Calif.Civ.Code, § 1654; Restatement of Contracts, § 236(d) (1932). Furthermore, the interpretation which the parties themselves have placed on their contract, as manifested by their conduct subsequent to its formation, has great weight in determining their intent with respect to the meaning of doubtful terms therein. Restatement of Contracts, § 235(e) (1932). And in the present case, despite having made the voluntary payments of $28,000 prior to the consummation date, the buyers proceeded to pay an additional $30,000 during the first fifteen months after the consummation date, thus manifesting an understanding that the voluntary payments were not to be a credit against the monies due under the contract during those months. If the buyers had understood that the voluntary payments were to be credited against such monies, they would have made no further payments during those months, for they would have believed that their obligation to make such payments was satisfied by the prior making of the voluntary payments. Moreover, the parties might have specified that the voluntary payments should be a credit against the first monies due under the contract after the consummation date, but they did not do so, and their failure to do so implies an intent that such payments should merely reduce the total purchase price of $1,000,000.

We note, incidentally, that in its conclusions of law, the District Court stated, "(the buyers), by reason of their voluntary payments * * * of the sum of $28,000 * * * are entitled to a credit against monies which will become due * * * after April 3, 1962, for water produced, saved, and sold * * *, but not against the judgment herein." The sellers apparently construe this statement as requiring that the voluntary payments be credited against "monies which will become due *immediately* after April 3, 1962, for water produced, saved, and sold * * *". They contend that the voluntary payments should not be credited against the next monies to become due under the contract after trial, but rather against the last. We do not consider this contention, because we feel it is based on a misconception of the District Court's conclusion. The District Court held only that since the voluntary payments should not be credited against the $48,000 due during the first two years after the consummation date, they should not reduce the judgment awarded the sellers. The necessary consequence of this holding is that they must be a credit against monies due under the contract after trial. But the District Court did not expressly hold that they should be a credit against the next monies due under the contract after trial; and there is no rational basis for inferring such a holding, for such a holding would have been outside the issues of the case.

3. Did the District Court err in holding that the buyers' duty to build or in-

stall the reservoir and pipelines on the water lands by June 12, 1958, was absolute and unconditional and that their failure to build or install them by that date constituted a breach of the contract regardless of the sufficiency of the water on the water lands to adequately service the Montgomery lands? Yes.

■ The foregoing presents a question of performance and discharge and, therefore, it, like the previous questions, is governed by the substantive law of California, the place of performance. Erie Ry. Co. v. Tompkins, supra; Klaxon v. Stentor Mfg. Co., supra. Calif.Civ. Code, § 1646; See 11 Cal.Jur.2d, "Conflict of Laws," § 60.

The relevant contractual provision is paragraph 3 of the letter agreement of September 13, 1955:

"3. *Subject to* the physical ability of the well or wells now or hereafter located on the Water Lands to produce sufficient quantities of water so as adequately to service (the Montgomery lands) with an adequate supply of water, contemplating that such lands will be developed for residential and industrial usages, (the buyers) agree within two years from (the consummation date) to install or construct or to cause to be installed or constructed a reservoir and pipelines to transmit water produced from the Water Lands at least to the nearest boundaries of (the Montgomery lands)." (Emphasis added.)

■ It is clear that the buyers' duty to build or install the reservoir and pipelines within two years of the consummation date (that is, by June 12, 1958) was originally conditional. It was "subject to" the sufficiency of the water on the water lands to adequately service the Montgomery lands. A contractual duty is conditional when it is dependent upon the occurrence of an uncertain event. Calif.Civ.Code, § 1434. The meaning usually attributed by most courts, including the California courts, to words such as "subject to" is that a promise so limited is conditional. See, e. g., Lawrence Block Co. v. Palston, 123 Cal.App. 2d 300, 266 P.2d 856 (1954).

■ The sellers argue that the buyers waived, or are estopped to assert, the condition to their duty. They point out, in this regard, that the contract provided for inspection and testing by the buyers of the wells on the water lands; that it recites that the buyers actually did inspect and test the wells prior to the consummation date; and that the buyers have had the right under the contract to terminate the contract at any time if, in their opinion, the water on the water lands "are no longer capable of producing water in quantities sufficient to be commercially profitable (to the buyers), or if * * * their operation is not economically feasible * * *", but they have never exercised this right.

Although the above mentioned points may tend to establish that the water on the water lands was in fact sufficient to adequately service the Montgomery lands, they do not establish an estoppel or waiver under California law or under the common law of contracts. That the buyers did not choose to exercise their right to terminate the contract may tend to show that the wells on the water land were capable of producing water in quantities sufficient to be commercially profitable to them; but it does not conclusively establish this, and even if it did, there is nothing in the record to indicate that it would necessarily follow that the wells were capable of adequately servicing the Montgomery lands.

■ The sellers emphasize the fact that although the buyers did not build or install the reservoir and pipelines on the water lands by June 12, 1958, they did build and install them at a later date before trial; and they argue that this fact establishes a waiver by the buyers of the condition to their duty to build or install the reservoir and pipelines. They rely on the principle that if a promisee undertakes to perform his contractual duty

without the condition thereto having occurred, he has waived that condition. See 3A Corbin on Contracts, § 752 (1960). We feel that this principle is inapplicable here, because the buyers have never performed "their contractual duty;" and, thus, they clearly cannot have performed such duty without the condition thereto having occurred. The buyers' duty under the contract was to build or install the reservoir and pipelines *by June 12, 1958.* This they admittedly did not do. Their subsequent construction of the reservoir and pipelines did not, in our opinion, constitute a waiver. We cannot agree with the sellers' theory that the buyers should be held liable for damages caused by a delay in performance on the ground that they belatedly rendered such performance, thereby waiving the condition to their duty to perform on time. There is nothing else in the present record to establish waiver or an estoppel.

 Under our holding above, the sufficiency of the water on the water lands to adequately service the Montgomery lands is quite material to the case. Therefore, we further hold that the District Court's denial of the buyers' motions for arbitration, on the ground that the question of sufficiency was immaterial,[6] was erroneous. *If* the present case is one which is otherwise proper for arbitration the buyers are entitled to have the question of sufficiency settled by arbitration. Whether it is such a case must be determined on the facts relative to the buyers' conduct. See Calif.Code Civ.Proc. § 1281; Bertero v. Superior Court, 216 A.C.A. 251, 30 Cal.Rptr. 719 (1963); Jordan v. Friedman, 72 Cal.App. 2d 726, 165 P.2d 728 (1946). And the determination must be governed by the pertinent California cases and statutes, for the contract is not one involving commerce 9 U.S.C. §§ 1–3, Bernhardt v. Polygraph Co. of America, 350 U.S. 198, 76 S.Ct. 273, 100 L.Ed. 199 (1955), and the question relates to performance and discharge and, therefore, under the pertinent authorities is governed by the substantive law of California, the place of performance. Erie Ry. Co. v. Tompkins, supra; Klaxon v. Stentor Mfg. Co., supra. Cal.Civ.Code § 1646; See 11 Cal.Jur.2d, "Conflict of Laws," §§ 54, 60; Leflar, The Law of Conflict of Laws, § 130 (1959).

The Judgment is reversed and the case is remanded to the District Court with directions to take such further proceedings as are consistent with the views expressed in this Opinion.

Each party to this appeal shall pay his own costs.

6. See District Court's Conclusion of Law X.