**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Mary FLOYD, Defendant–Appellant.**

No. 92–50270.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 4, 1993.

Decided July 29, 1993.

George W. Hunt, San Diego, CA, for defendant-appellant.

Amalia Meza, Asst. U.S. Atty., San Diego, CA, for plaintiff-appellee.

Before: WALLACE, Chief Judge, SNEED and HALL, Circuit Judges.

SNEED, Circuit Judge:

Appellant Mary Floyd challenges the district court's denial of her request for specific performance of her plea agreement which required the government to move for a downward departure if she complied with the agreement. We vacate her sentence and remand for further proceedings.

## I.

### FACTS AND PRIOR PROCEEDINGS

In December of 1989, undercover government agents met with Mary Floyd and her companion, Anthony Myers, to conduct negotiations for the sale of ephedrine, a precursor ingredient for methamphetamine. Floyd and Myers were acting as brokers for a customer that manufactured methamphetamine and were interested in purchasing ephedrine over a one or two year period. At this meeting, Floyd and Myers provided the agents with a twelve gram sample of methamphetamine produced by their customer. The agents reciprocally displayed a barrel of the ephedrine, which Myers taste-tested. The meeting ended with Floyd and Myers agreeing to contact the agents with information about the quantity and price desired by their customer.

On December 19, 1989, the undercover officers and their informant met with Floyd and Myers, as well as the customer and his aide, to consummate the sale. After the customer displayed $270,000 in cash, Myers, the customer, and an agent proceeded to an area where 825 pounds of ephedrine was stored. Floyd and the customer's aide remained at the meeting place. The parties loaded the ephedrine onto a vehicle at the storage area, and then the government agents arrested all the defendants, including Floyd and the customer's aide at the meeting place.

On January 3, 1990, the government filed an indictment charging Floyd and Myers with violating 21 U.S.C. §§ 846 and 841(a)(1), conspiracy to manufacture methamphetamine with intent to distribute, and 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2, possession with intent to distribute approximately twelve grams of methamphetamine and aiding and abetting.

In October of 1990, Floyd and Myers pled guilty to the §§ 846 and 841(a)(1) count pursuant to a written plea agreement. The district court accepted the guilty pleas and the plea agreement after following the strictures of Rule 11 of the Federal Rules of Criminal Procedure. In the plea agreement, Floyd agreed to submit to interviews and testify fully and truthfully concerning her case and any knowledge she had of narcotics trafficking. She also agreed to commit no further crimes. If she complied with the agreement's terms, the government agreed to move for a downward departure.[1]

---

1. The plea agreement, in relevant parts, said:

IT IS HEREBY STIPULATED and agreed, by and between the plaintiff, UNITED STATES OF AMERICA, by and through its counsel, William Braniff, United States Attorney, and Amalia L. Meza, Assistant United States Attorney, and the defendant, Mary Floyd through her attorney Ron MacGregor, Esq. that this document, which contains the following terms and conditions, sets forth the full and complete plea agreement between the parties:

1. The United States will accept a guilty plea from the defendant to count one of the Indictment charging defendant with violating Title 21, United States Code, Section 841(a)(1)

and 846, namely, Conspiracy to Manufacture Methamphetamine With Intent to Distribute.

.    .    .    .    .

8. The defendant agrees that, if compelled to do so, she will, in any proceeding, testify fully and truthfully regarding (a) her knowledge of and/or participation in the acts and events constituting the basis for the indictment in this case and; (b) her knowledge of an[d]/or participation in criminal activity involving the trafficking of narcotics. Further, the defendant will submit to interviews with agents of the United States and will truthfully disclose to them information regarding narcotics trafficking of which she knows.

After her release from custody, Floyd supplied the government with the names of approximately twenty potential drug trafficking suspects. None of these individuals were arrested. Floyd allegedly attempted to set up various undercover drug busts for the government as well. No arrests came from these activities either.

On April 15, 1991, Floyd and Myers signed an acknowledgment which stated that no results had been achieved from the information they had provided and that it was their responsibility to use their best efforts to provide substantial assistance to the government.[2]

Myers' bail was revoked after his brother told the government that Myers was planning to leave the country. Floyd asked that Myers be released to finish an undercover deal they were working on, and then she disappeared. She did not appear for her July 1, 1991 sentencing hearing, and a bench warrant was issued for her arrest. Floyd was not heard from again until her arrest on November 11, 1991.

Concluding that she had not fulfilled her obligations, the government did not move for a downward departure. Floyd disagreed and asked the court for specific performance of the plea agreement. In construing the plea agreement, the court determined that it was not integrated and that Floyd had agreed to "cooperate" with the government. The court concluded that Floyd had not fulfilled her obligation to "cooperate" under the plea agreement, did not depart downward, and sentenced her to 235 months.

## II.

### JURISDICTION AND STANDARDS OF REVIEW

The district court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction under 28 U.S.C. § 1291. The district court's interpretation of a plea agreement is a finding of fact and is reviewed for clear error, *United States v. Read,* 778 F.2d 1437, 1441 (9th Cir.1985), *cert. denied,* 479 U.S. 835, 107 S.Ct. 131, 93 L.Ed.2d 75 (1986), but its application of the legal principles is a question of law reviewed de novo, *L.K. Comstock & Co.*

---

9. If defendant abides by the provisions of this agreement, the Government will recommend a downward departure from the sentencing guidelines and the mandatory minimum sentence.

. . . . .

11. The United States will inform the sentencing judge and the probation department of: (1) this plea agreement; (2) the nature and extent of defendant's activities in this case; (3) the full nature and extent of defendant's cooperation with the government and the date when such cooperation commenced; and (4) all information in the possession of the government which is relevant to sentencing.

. . . . .

14. The defendant must at all times give complete, truthful, and accurate information and testimony. A further condition of this agreement is that the defendant must not commit any further crimes. Should it be established that she has intentionally provided materially false, incomplete, or misleading testimony or information, or has otherwise violated any provision of this plea agreement, this plea agreement shall be null and void, and the defendant shall thereafter be subject to prosecution for any federal criminal violation of which the United States Government has knowledge, including but not limited to perjury and obstruction of justice. Any such prosecution may be premised upon information provided by defendant and such information may be used against her.

15. No additional promises, agreement[s], representations, or conditions have been entered into with respect to defendant's criminal liability other than those set forth in this plea agreement.

2. The full acknowledgment said:

### ACKNOWLEDGMENT

We hereby reaffirm the plea agreement we entered into with the United States Government in October, 1990. We understand that our sentencing hearing will be continued one last time to enable us to provide substantial assistance to the Government.

We understand that "substantial assistance" means that we must provide substantial assistance in the investigation or prosecution of another person who has committed an offense.

We recognize that no results have yet been achieved despite the fact that our sentencing has previously been continued.

We understand that absent "substantial assistance" by us, we will be remanded to custody to serve out our sentences pursuant to the Sentencing Guidelines.

We further understand that it is our responsibility to use our best efforts to provide "substantial assistance" to the Government.

*v. United Eng'r & Constructors Inc.*, 880 F.2d 219, 221 (9th Cir.1989).

## III.

### *DISCUSSION*

This appeal concerns Mary Floyd's obligations under the plea agreement she entered into with the government. Floyd claims she complied with the plea agreement and the government breached it by not moving for a downward departure. The government contends that Floyd did not comply with the agreement and was therefore sentenced properly.

■ To fix Floyd's obligation, a court must determine what the parties reasonably understood to be the terms of the agreement. *Read,* 778 F.2d at 1441. A plea agreement is contractual in nature and is subject to contract law standards. *United States v. Arnett,* 628 F.2d 1162, 1164 (9th Cir.1979).

The district court found that Floyd had agreed to "cooperate" in exchange for the motion for downward departure and that she had failed to maintain her end of the bargain. The court arrived at this conclusion by finding that the agreement was not integrated. That is, the court found that the parties did not intend the agreement to be the sole source of its meaning. Restatement (Second) of Contracts § 209 (1979) (hereafter Restatement). Therefore, under the parol evidence rule, extrinsic evidence was admissible to show the parties' true intent.

■ The district court erred in finding the original plea agreement not integrated. At the time it was signed, it clearly purported to be a complete and final embodiment of the agreement. *See* Restatement § 210. The first paragraph of the plea agreement clearly states that the agreement "sets forth the full and complete plea agreement between the parties." The last paragraph says that no additional promises, agreements, representations, or conditions were entered into with respect to Floyd's criminal liability.[3] The court, to the extent it looked to prior or contemporaneous negotiations or agreements, violated the parol evidence rule when

it incorporated "cooperation," an inconsistent and additional term, into the completely integrated plea agreement. Restatement §§ 215, 216. The terms of the original plea agreement did not require Floyd to provide substantial assistance to the government.

■ The parol evidence rule does not preclude subsequent modifications of completely integrated agreements, however. *See Shatto v. Evans,* 728 F.2d 1224, 1227 n. 1 (9th Cir.1984). It appears that the district court looked to the acknowledgment's "substantial assistance" language in arriving at its "cooperation" interpretation of Floyd's obligation under the agreement. The court basically treated the acknowledgment as a modification of the original plea agreement.

■ But Federal Rule of Criminal Procedure 11 must be observed when dealing with plea agreements. A plea agreement, and therefore any modification of a plea agreement, must be accepted by the court before it is binding. *United States v. Savage,* 978 F.2d 1136, 1138 (9th Cir.1992), *cert. denied,* — U.S. ——, 113 S.Ct. 1613, 123 L.Ed.2d 174 (1993). Rule 11 requires the district judge, in open court, to determine that the agreement is voluntary and not the result of threats or of promises apart from the plea agreement. Fed.R.Crim.P. 11(d). The judge can either accept, reject, or defer a decision concerning the plea in his or her discretion. Fed.R.Crim.P. 11(e)(2). "[S]ubdivision (e) is designed to prevent abuse of plea discussions and agreements by providing appropriate and adequate safeguards." Fed.R.Crim.P. 11 adv. comm. notes (1974), *reprinted in* 18 U.S.C.App. (1988).

■ Although the parties might have intended to modify the plea agreement with the acknowledgment and bind Floyd to "cooperation" or "substantial assistance," the district judge never held a Rule 11 hearing to determine whether the acknowledgment was a proper modification of the plea agreement. Without such a hearing, Floyd was deprived of the safeguards Rule 11 was enacted to impose. We vacate Floyd's sentence and instruct the district court to hold a Rule 11

---

**3.** For the relevant text of the plea agreement see  note 1.

hearing to determine whether the acknowledgment was a valid modification of the plea agreement. Once this determination is made, the court should make a factual determination whether each party has complied with the then settled terms of the plea agreement and sentence accordingly.

VACATED AND REMANDED.

WALLACE, Chief Judge, dissenting:

The majority holds that Floyd's sentence must be vacated so that the district court may conduct a hearing pursuant to Federal Rule of Criminal Procedure 11 on whether to accept the "acknowledgment" as an effective amendment of the original plea agreement. If under the provisions of the original plea agreement the government was not obligated to move for a downward departure because Floyd had failed to live up to her end of the bargain, the majority's holding would be nothing but a superfluity. Because there must be a purpose for the required hearing, this holding implies that the majority has concluded that if only the terms of the original plea agreement apply, the government stands in breach of the agreement. That requires me to dissent.

At the conclusion of an evidentiary hearing, the district court stated:

So, overall the court would find that the agreement calls for her cooperation and her participation in trying to set up a deal where the government can catch the people, and I use the term red-handed, and her attempt to do that. And I find that she has never, never completed that. She finds excuses. I think we have three occasions, and each time there's an excuse on her part why she wasn't able to do it. So I find that she has not complied with the plea agreement.

. . . . .

[I]t's not in good spirit of the agreement if she absents herself and she's not available, and there's no evidence one way or the other whether she voluntarily did that or didn't. And I have to assume that she has the power to come and be available, make herself available. There's no evidence of phone calls. There's no evidence of appearances. There's no evidence of writing or anything to try and get in touch with the agent [responsible for her case]. So that's certainly not within the spirit of the contract. And you have implied conditions and implied promises that, "I'll be cooperative, and I'll make myself available so I can talk. I'll let people know where I am so I can be available."

There are three findings embedded in the above-quoted language: (1) the plea agreement required that Floyd cooperate with the government beyond merely giving names; (2) Floyd never followed through, despite having promised to arrange three separate undercover operations; and (3) Floyd's unaccounted-for absence constituted a breach of her promise to cooperate with the government. The majority presumably does not dispute either the second or the third finding, but instead focuses on the first, and concludes that the district court erroneously interpreted the plea agreement to require Floyd's cooperation. This result is predicated upon three distinct errors.

First, the majority fails to consider section 5K1.1 of the United States Sentencing Guidelines (Guidelines), which provides that in order for the government to move for a downward departure, it must certify that the defendant rendered substantial assistance. Assuming for a moment that the majority is correct that the fully integrated plea agreement does not, on its face, require Floyd's cooperation (I also have a problem with this), should not the defendant, who was represented by counsel throughout these proceedings, be held responsible for knowing the law governing the "contract" she signed? Any doubts about this question are laid to rest by paragraph 5 of the plea agreement, which provides that "the sentence will be controlled by the 'Sentencing Guidelines' and [defendant] has discussed these Guidelines with his attorney." Section 5K1.1 is the only provision in the Guidelines that provides authority for a district court to depart downward upon the government's motion. The Guidelines require "substantial assistance" before the government may request a downward departure, and the plea agreement unambiguously incorporates the Guidelines. Surely the ma-

jority does not require an explicit reference to each specific section of the Guidelines that may become relevant to sentencing for it to become operative. But if not, then how can the absence of an explicit reference to substantial assistance in the text of the agreement itself obviate the requirement of section 5K1.1 that the defendant assist the government to qualify for a downward departure recommendation? I believe it cannot, and thus conclude that under the terms of the original plea agreement, Floyd was required to provide substantial assistance before the government would be obligated to move for a downward departure. I would affirm the district court on this basis alone.

Second, even if we disregard the applicable provision of the Sentencing Guidelines, the district court's finding that Floyd had not lived up to her end of the bargain is supported by the terms of the original plea agreement. Paragraph 14 of the agreement requires that the information supplied by Floyd be *complete* as well as truthful. It is not unreasonable, and it certainly is not clearly erroneous, for the district court to have found that just giving names does not amount to complete, truthful, and accurate information regarding narcotics trafficking, as required by paragraphs 8 and 14.

Furthermore, the provisions of the plea agreement support the district court's finding, which the majority agrees is reviewed for clear error, that the agreement required Floyd to cooperate more extensively with the government. Paragraph 11 specifically refers to the government's duty to inform the district court of the "nature and extent of defendant's *cooperation* with the government" (emphasis added). Read together with paragraphs 8 and 14, this provision indicates that although cooperation is not explicitly mentioned in those paragraphs, it in fact is what the parties intended. The crucial point is that there is support *within the four corners of the document* for the district court's interpretation of the arguably ambiguous contractual language to require Floyd's cooperation. How then can this court declare that interpretation to be clearly erroneous?

Third, the majority also is mistaken in its reliance on the parol evidence rule. The rule is irrelevant to this case. As set forth in the Restatement (Second) of Contracts (Restatement), the rule against parol evidence applies only to the use of "prior or contemporaneous agreements or negotiations" to "contradict a term of the writing." Restatement, § 215. The district court, however, looked not to "prior or contemporaneous" statements, but to Floyd's actions *subsequent* to the execution of the plea agreement. The Restatement expressly provides that such "course of performance" evidence is relevant to contractual interpretation. *See* Restatement, § 202(4) ("Where an agreement involves repeated occasions for performance by either party with knowledge of the nature of the performance and opportunity for objection to it by the other, any course of performance accepted or acquiesced in without objection is given great weight in the interpretation of the agreement."); *see also id.* at Comment g ("The parties to an agreement know best what they meant, and their action under it is often the strongest evidence of their meaning."); *United States v. Haas & Haynie Corp.*, 577 F.2d 568, 574 (9th Cir.1978); *Riess v. Murchison*, 329 F.2d 635, 642 (9th Cir. 1964), *cert. denied*, 383 U.S. 946, 86 S.Ct. 1196, 16 L.Ed.2d 209 (1966); Idaho Code § 28–2–202 (integrated contract "may be explained or supplemented ... by course of performance"); Nev.Rev.Stat. § 104.2208 (same); Cal.Civ.Proc.Code § 1856(c) (same).

Thus, evidence of Floyd and the government's ongoing interactions following the execution of the plea agreement is relevant to establishing the meaning of the plea agreement itself, inasmuch as such evidence sheds light on what the parties reasonably intended at the time that they entered into the agreement. In this case, as the district court found, there were at least three occasions after she signed the plea agreement when Floyd reneged on promised sting operations. She herself testified regarding the abortive undercover operations. Floyd surely had ample opportunity to express any objection she may have had to the government's repeated attempts to get her to cooperate with its investigations. Yet the record is devoid of any suggestion that Floyd ever resisted

participating in such activities, and her participation is strong evidence that she understood the plea agreement to require it.

As the majority concedes, the parol evidence rule does not bar consideration of subsequent statements such as those contained in the acknowledgment. By signing the acknowledgment, Floyd acquiesced in the government's understanding that the plea agreement required cooperation beyond what she had provided up to that point. The acknowledgment therefore is surely relevant to the question of the parties' reasonable understanding of the agreement. *Cf.* Restatement, § 202(4). But the majority insists that as a "modification" of the agreement, it first must be accepted by the court in a Rule 11 proceeding. The acknowledgment, however, is not properly construed as a modification of the original plea agreement, but, as part of the course of performance of the agreement, *see* Restatement, § 202(4); II E. Allan Farnsworth, *Farnsworth on Contracts* § 7.13, at 291–92 (1990), as evidence of the parties' *reasonable intentions* with regard to its meaning: that Floyd provide substantial assistance to the government in exchange for a downward departure motion.

It is true that the district court erred as well in concluding that only if the plea agreement was not fully integrated could it consider the subsequent actions of Floyd and the government, but that error worked in Floyd's favor to the extent it had any impact at all. I will not address the majority's analysis of the integration issue, because regardless of whether or not the plea agreement was fully integrated, evidence of the parties' course of performance is relevant to interpreting the plea agreement. The district court pointed to Floyd's asking "to be given some meth so she could go out and make a deal" as evidence "that she thought cooperation was a part of the plea agreement." This factual finding is not, on the record before us, clearly erroneous.

To sum up, along the way to rejecting the district court's finding, ostensibly subject to clearly erroneous review, that the original plea agreement required Floyd to cooperate

with the government beyond just giving names, the majority (1) ignores the relevant provisions of the Sentencing Guidelines despite their express incorporation by the plea agreement, (2) disregards language in the plea agreement itself that supports the district court's interpretation, and (3) misconstrues the parol evidence rule to bar consideration of Floyd's actions after signing the agreement. Because I conclude the majority's analysis is in error, I dissent.