**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

---

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*,

v.

DAVID M. MARK,
*Defendant-Appellant*.

No. 13-10579

D.C. No.
2:11-cr-00453-
PMP-CWH-1

OPINION

---

Appeal from the United States District Court
for the District of Nevada
Philip M. Pro, Senior District Judge, Presiding

Argued and Submitted
March 9, 2015—San Francisco, California

Filed July 31, 2015

Before: M. Margaret McKeown, Mary H. Murguia, and
Michelle T. Friedland, Circuit Judges.

Opinion by Judge Friedland;
Concurrence by Judge McKeown

# SUMMARY[*]

## Criminal Law

The panel reversed the district court's denial of the defendant's motion to reconsider its denial of the defendant's motion to dismiss the indictment, and remanded with instructions to dismiss the indictment, in a case in which the parties agreed that the defendant was given immunity in exchange for his cooperation in a mortgage-fraud investigation.

The panel held that in light of the scant record supporting the government's claim that the defendant breached the immunity agreement (and was therefore amenable to prosecution) and clear evidence that key details of the government's story were inaccurate, the district court abused its discretion when it failed to either grant the defendant's motion for reconsideration or order an evidentiary hearing.

Concurring, Judge McKeown wrote separately to emphasize that this case is a textbook lesson in the importance of documentation with regard to immunity deals.

---

[*] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

## COUNSEL

Michael S. Fawer (argued), Smith & Fawer, Covington, Louisiana, for Defendant-Appellant.

Peter S. Levitt (argued), Assistant United States Attorney, Daniel G. Bogden, United States Attorney, Elizabeth O. White, Appellate Chief, United States Attorney's Office, Las Vegas, Nevada, for Plaintiff-Appellee.

## OPINION

FRIEDLAND, Circuit Judge:

When the government promises not to prosecute a witness in exchange for his cooperation, it cannot then indict the witness unless it proves that he failed to cooperate. Because the government did not do so here, we remand with instructions to dismiss the indictment.

## I.

From 2006 to 2007, Defendant David Mark and his then-girlfriend Kimberly Brown were employed by Distinctive Real Estate and Investments, a company run by Eve Mazzarella in Las Vegas. During Mark's tenure, the FBI began investigating Distinctive Real Estate, Mazzarella, and her husband Steven Grimm in connection with a large-scale mortgage-fraud scheme.

In November 2007, Brown and Mark voluntarily reached out to the FBI and provided information to assist in its investigation. A few months later, in March 2008, Assistant U.S. Attorney Brian Pugh interviewed Brown and Mark to determine whether they would be good witnesses in a potential trial against Grimm and Mazzarella. At the

end of this interview, Mark expressed concern about what was going to happen to him. Pugh assured Mark and Brown that, as long as they cooperated with the government, they would not be prosecuted. Pugh later acknowledged that his statement created informal immunity agreements with both witnesses.[1]

In February 2011, Pugh called Mark to go over his testimony in preparation for the upcoming Mazzarella-Grimm trial. Assistant U.S. Attorney Sarah Griswold and an FBI agent also participated in the call, which was made to Mark's cell phone and lasted approximately an hour. The FBI agent produced a report memorializing the discussion. For reasons unrelated to Mark, the trial was later postponed, so he was not called to testify.

In August 2011, Mark received a target letter informing him that he faced the possibility of indictment in connection with the mortgage-fraud scheme. In response to the letter, Mark hired an attorney who immediately contacted the prosecutors to set up a meeting. After unsuccessful plea negotiations during which Mark's immunity deal was never mentioned, Mark was charged with five counts of bank fraud; one count of mail fraud; and one count of conspiracy to commit bank fraud, mail fraud, and wire fraud.

Mark's trial began in March 2013. During Kim Brown's testimony, she explained that in 2008 Pugh had promised her and Mark immunity from prosecution as long

---

[1] Brown's immunity agreement was at issue in *United States v. Mazzarella*, 784 F.3d 532, 538 (9th Cir. 2015).

as they cooperated with the government. According to Mark's attorney, this was the first time he had heard about Pugh's promise. Three days later, Mark filed a motion to dismiss the indictment based on the informal immunity agreement.

The district court suspended the trial and held a hearing to determine whether Mark was immune from prosecution. Pugh and Griswold both testified that they called Mark in July 2011 to go over his testimony in preparation for the rescheduled Mazzarella-Grimm trial. The prosecutors recounted that, unlike when they spoke to Mark in February 2011, Mark was suddenly uncooperative and pretended not to remember anything. Pugh explained that they initiated the July 2011 call "us[ing] a speakerphone" in a conference room in the U.S. Attorney's Office, and reached Mark "at his telephone number that [they] had from prior interviews," an account with which Griswold agreed. Pugh further testified that an FBI agent was present during the call, and that, although he could not specifically remember which agent it was, he "believe[d] it was Sean Jones, because [Jones] was the case agent at the time." Agent Jones testified, however, that he could not recall being part of a July 2011 phone call. Pugh acknowledged that the U.S. Attorney's Office had no notes or other records of the call, but he testified that he sent the August 2011 target letter in response to the call. Mark, on the other hand, testified that the July call never occurred, and that he had no calls with Pugh between February and his receipt of the target letter in August.

Ruling from the bench, the district court denied Mark's motion to dismiss. The judge credited the testimony of Pugh and Griswold and found that the July call happened as they described.

Mark's trial continued.  At the conclusion of the trial, the jury convicted Mark on multiple counts.

Shortly thereafter, Mark sought reconsideration of his motion to dismiss the indictment based on new evidence. After hearing the prosecutors' testimony about the alleged July call, Mark had subpoenaed phone records between the U.S. Attorney's Office and Mark's cell phone, and had now received those records.  Although the records confirmed the February call, there were no entries showing a call to Mark in July.  Mark argued that the new evidence undermined the prosecutors' testimony and that the district court therefore should reconsider its denial of the motion to dismiss.

The district court denied Mark's motion to reconsider, holding that there were "no sufficient grounds presented to warrant [a] further evidentiary hearing or reconsideration of [the] Court's previous Order denying Defendant's motion to dismiss."

## II.

### A.  Standard of Review

We review rulings on reconsideration motions for abuse of discretion.  *See United States v. Tapia-Marquez*, 361 F.3d 535, 537 (9th Cir. 2004).  A district court abuses its discretion if it does not apply the correct legal standard or if it rests its decision on a clearly erroneous finding of fact. *See United States v. Hinkson*, 585 F.3d 1247, 1261-62 (9th Cir. 2009) (en banc).

### B.  Analysis

The parties agree that Mark was given immunity in exchange for his cooperation.  The dispute here is whether

Mark breached the immunity agreement and thus made himself amenable to prosecution.

In order to deny the motion to dismiss the indictment, the district court had to find that Mark breached the immunity agreement. *See United States v. Carrillo*, 709 F.2d 35, 37 (9th Cir. 1983) ("[B]ecause [the defendant] fulfilled all . . . obligations under the agreement, under settled notions of fundamental fairness the government was bound to uphold its end of the bargain."). As the government conceded at oral argument, it had the burden of proving that Mark breached. *See United States v. Fitch*, 964 F.2d 571, 574 (6th Cir. 1992) ("If [an immunity] agreement has been entered into, the government bears the burden of proving that the defendant failed to satisfy his part of the deal."); *see also United States v. Packwood*, 848 F.2d 1009, 1011 (9th Cir. 1988) (holding that the government has the burden of proof to show breach of a plea agreement). The government must prove a breach of an immunity agreement by a preponderance of evidence. *See United States v. Castaneda*, 162 F.3d 832, 836 (5th Cir. 1998); *United States v. Meyer*, 157 F.3d 1067, 1078 (7th Cir. 1998); *United States v. Gerant*, 995 F.2d 505, 508 (4th Cir. 1993); *see also Packwood*, 848 F.2d at 1011 (requiring that the government show the defendant breached a plea agreement by a preponderance of evidence).

Initially, the district court accepted the prosecutors' account that Mark suddenly became uncooperative during a July call—an account that did, when credited, support the finding that Mark had breached the immunity agreement. In his motion to reconsider, however, Mark presented phone records that contradicted the prosecutors' testimony about the July call. The district court did not explain why, despite the new phone records, it chose not to hold a further evidentiary hearing or otherwise reconsider its earlier order

denying the motion to dismiss. In light of the scant record supporting the government's claim of a breach and clear evidence that key details of the government's story were inaccurate, the district court abused its discretion when it failed to either grant Mark's motion for reconsideration or order an additional evidentiary hearing.

The government's only evidence of breach was testimony by Pugh and Griswold that Mark became uncooperative during a July 2011 phone call. The prosecutors testified that they and an FBI agent made the call to Mark's cell phone from a speakerphone in a conference room at the U.S. Attorney's Office. That account, however, is directly contradicted by the phone records that Mark presented in his motion to reconsider. The records show that there were no calls between the U.S. Attorney's Office and Mark's cell phone during the month of July.

The absence of phone records corroborating the July call stands in stark contrast with the February call. Both sides agree that Pugh, Griswold, and an FBI agent interviewed Mark over the phone in February 2011 in preparation for the Mazzarella-Grimm trial. The phone records show a call on February 1 from the U.S. Attorney's Office to Mark's cell phone that lasted approximately an hour, as well as several shorter calls the day before.

The February conversation was also memorialized in a report prepared by the FBI agent who participated in that call. The July call, on the other hand, which purportedly had the same trial-preparation purpose, was not memorialized by the prosecutors or by any FBI agent. The government did not dispute at oral argument that the usual practice in the U.S. Attorney's Office was to keep notes during any such interview. Here, however, there are no

notes from a July call, and the FBI case agent at the time testified that he had no recollection of such a call. The government has failed to supply an explanation for either of these gaps in the record.

The government also did not dispute at oral argument that a target letter to a witness who previously had an immunity deal would ordinarily describe the defendant's breach. But the target letter Mark received does not mention a July call, or any other instance of a breach, to explain why the government suddenly considered Mark a target rather than a cooperating witness.

Perhaps at a further evidentiary hearing the prosecutors could have reconciled their recollections that a call happened with all of the apparent evidence to the contrary. But the government has urged us not to remand for an evidentiary hearing and instead has expressed a desire to stand on the existing record. When asked whether remanding the case for a further evidentiary hearing would be appropriate, the government attorney stated: "I can't imagine that at a further evidentiary hearing . . . that anything else is going to get unearthed." When pressed further on whether the government would "stake its claim" on the existing record, he answered "correct." We therefore evaluate whether, on the current record, the government met its burden of proving that Mark breached.

The government's only affirmative evidence of a breach is the testimony of Pugh and Griswold, which was directly contradicted by the phone records. This is insufficient to prove that Mark stopped cooperating during a July call, particularly in light of the lack of any notes memorializing a call or any mention of a call in the target letter. This is troubling because the government made clear at oral argument that it is the typical practice of the office

to keep such records.[2]  *Cf.* Fed. R. Evid. 803(7) (providing that the "Absence of a Record of a Regularly Conducted Activity" may be evidence that "the matter did not occur or exist").   In light of the gaps and contradictions in the record, the district court's failure to either grant Mark's motion for reconsideration or order an additional evidentiary hearing was an abuse of discretion.[3]

### III.

For the foregoing reasons, we reverse the district court's denial of Mark's motion to reconsider and remand with directions to dismiss the indictment.

**REVERSED and REMANDED.**

McKEOWN, Circuit Judge, concurring:

The opinion, which I join in full, aptly describes why the government failed to meet its burden of proving that Mark breached his informal immunity agreement with federal prosecutors.   I write separately to emphasize that

---

[2] At oral argument, the government also acknowledged that it had searched the phone records for calls between the U.S. Attorney's Office and any number in Louisiana, which is where Mark's cell phone was registered and where he had lived after leaving Las Vegas, but had found nothing.

[3] Mark raised two other issues on appeal.  Because we are remanding with instructions to the district court to dismiss the indictment, we need not reach those additional issues.

this case is a textbook lesson in the importance of documentation with regard to immunity deals.  When it comes to proving breach of an immunity agreement, the government should do better than "he said, she said."

The government routinely enters into agreements in which it promises leniency in exchange for cooperation with an investigation or prosecution.  The threshold question of whether a deal was made in the first place is often the subject of dispute.  *See, e.g., United States v. Aleman*, 286 F.3d 86, 90 (2d Cir. 2002) (noting the parties' "failure to agree on the existence" of an agreement); *United States v. Thompson*, 25 F.3d 1558, 1562 (11th Cir. 1994) (evaluating an "alleged oral grant of immunity").  Here, the government candidly acknowledges it made such an agreement directly with Mark, though it inexplicably failed to disclose the existence of the agreement to his counsel, who learned about it by happenstance while questioning another witness at Mark's trial.

Granting immunity is a big deal.  Claiming that a defendant breached the agreed-upon terms is an equally big deal.  Prosecuting someone who was previously granted immunity implicates "more . . . than just the liberty of [a] defendant.  At stake is the honor of the government[,] public confidence in the fair administration of justice, and the efficient administration of justice in a federal scheme of government."  *United States v. Carter*, 454 F.2d 426, 428 (4th Cir. 1972) (en banc).  Failure to document the breach, even with something as simple as a file note, a memo, or a reference in the target letter is dumbfounding.  *See United States v. Harvey*, 869 F.2d 1439, 1443 (11th Cir. 1989) (en banc) ("[T]his appeal would not be necessary had the United States Attorneys . . . reduced their agreement . . . to writing.").

When the government alleges breach stemming from the failure to cooperate sufficiently, a typical response is that the defendant complied with the literal terms of the deal. *See, e.g., Ricketts v. Adamson*, 483 U.S. 1, 11 (1987) (noting that the defendant's argument that his plea agreement did not require him to testify was "an interpretation of the agreement that proved erroneous"); *United States v. Floyd*, 1 F.3d 867, 868-70 (9th Cir. 1993) (highlighting the difference between an agreement that requires a defendant to "testify fully and truthfully" and an agreement that requires her to "cooperate"); *United States v. Irvine*, 756 F.2d 708, 710-11 (9th Cir. 1985) (per curiam) (holding that defendant's malfeasance constituted a breach notwithstanding his accurate "testimony" because the agreement proscribed any and all "deception"). This case tracks that pattern in the broadest sense: Mark claims that he complied with the terms of his immunity agreement by cooperating with the government's investigation, while the prosecutors maintain that he breached by giving evasive and contradictory answers to their questions.

In its details, however, this case is far from typical. Specifically, the government claims that Mark breached the immunity agreement during a July 2011 phone call with two Assistant United States Attorneys and an FBI agent. Unlike a defendant who attempts to characterize his less-than-complete cooperation as compliance with the literal terms of an agreement, Mark disputes the very event—the phone call—that prosecutors assert is the genesis of the breach. Mark says that this phone call never took place at all.

The government bears the burden of proving the breach. Slip Op. 7. When confronted with contradictory evidence about whether a breach occurred, the district court must make factual findings about the defendant's

compliance. *See Floyd, 1 F.3d at 871.* As a threshold matter, the government needed to prove that a call between prosecutors and Mark took place in July 2011. Absent a phone call, the claim of breach collapses. Two prosecutors testified that they and an FBI agent called Mark. Mark denied that the call took place, and the FBI agent testified that he had no recollection of the call. While the district court is generally entitled to base its rulings on the credibility of witnesses, this case takes on a different patina due to the absence of any documentary evidence about the call itself, let alone the content of the supposed breach.

It is undisputed that the prosecutors spoke with Mark in February 2011 as part of their preparation for the Mazzarella-Grimm trial. Fast forward only five months and the prosecutors were in the throes of preparing for the trial that had been continued. In contrast to the well-documented February call, which was memorialized in phone records and a follow-up memo by an FBI agent, the purported July call yielded no records. It is difficult to conceive that a trial preparation call involving two attorneys, one FBI agent, and a key witness in a multi-million dollar fraud case would not trigger a substantial paper trail or at least a scrap of documentary evidence. But here, neither the prosecutors nor the FBI could find any notes, correspondence, or other documents verifying that a call had taken place, let alone the results of the call. *See Harvey*, 869 F.2d at 1443 (describing the government's failure to take notes during witness interviews as "astonishing"). The only near-contemporaneous document the government produced—the target letter sent to Mark in August 2011—contains no reference to a July call. The absence of any notes or documentation coupled with complete silence in the target letter is nothing short of remarkable.

In light of this abysmal record, the district court was forced to base its ruling on little more than a swearing contest. Interestingly, the swearing contest pitted the prosecutors against not just Mark but also an FBI agent who had no recollection of the call. Significantly, the court did not make an adverse credibility finding regarding Mark. Following the district court's initial ruling, Mark requested that the government produce phone records to corroborate that the call took place. In response, the government for the first time attempted to reconstruct evidence of the call. The government's belated search for phone records, however, demonstrated that the central details of the prosecutors' testimony were inaccurate: no call was placed from the United States Attorneys' office to Mark's cell phone in July 2011. At that point, the district court should have dismissed the indictment or granted a new evidentiary hearing. Notably the government has now eschewed any suggestion of another evidentiary hearing.

Whenever a defendant is prosecuted after having been given immunity, it is eminently foreseeable that he will advance every legitimate argument that his immunity should have remained intact. Cases involving oral grants of immunity and undocumented breaches "create confusion for the government and for the courts." *Harvey*, 869 F.2d at 1443. Contemporaneous documentation is thus critical to detail the scope and terms of the agreement and equally critical to establish whether a breach occurred. Setting up a claim of breach without any documentation puts the court and counsel in the unenviable position of reconstructing a breach solely through a swearing contest and a hypothetical reimagining of events. To be sure, the government holds the cards in such a situation. But when the defendant's liberty rests on those cards, common sense, fairness, and confidence in the system demand more. I therefore concur

in the opinion remanding with instructions to dismiss the indictment.